917 F.2d 130
 Joseph C. BRAY, Plaintiff-Appellant,
v.
The INSURANCE COMPANY OF THE STATE OF PENNSYLVANIA, Defendant-Appellee,
and
Nationwide Mutual Fire Insurance Company, Defendant.
Joseph C. BRAY, Plaintiff-Appellee,
v.
The INSURANCE COMPANY OF THE STATE OF PENNSYLVANIA,
Defendant-Appellant,
and
Nationwide Mutual Fire Insurance Company, Defendant.
 Nos. 89-2383, 89-2389.
 United States Court of Appeals,
Fourth Circuit.
 Argued April 4, 1990.
Decided Oct. 17, 1990.
As Amended Nov. 6, 1990.
 
 Richard Neal Shapiro (argued), Sykes, Carnes, Bourdon, Ahern & Shapiro, P.C., Virginia Beach, Va., for appellant.
 Ronald Keith Jaicks, Ralph Boccarosse, Jr. (on brief), Siciliano, Ellis, Dyer & Boccarosse, Fairfax, Va., for appellee.
 Before HALL and MURNAGHAN, Circuit Judges, and BUTZNER, Senior Circuit Judge.
 BUTZNER, Senior Circuit Judge:
 
 
 1
 Joseph C. Bray appeals from a judgment denying him underinsured motorist coverage on a semi-trailer he was hauling when he was injured in an accident. We reverse because Virginia law entitles Bray to underinsurance coverage, although the policy issued to the owner of the semi-trailer did not on its face purport to afford this coverage.
 
 
 2
 * Bray, a resident of Virginia, was driving a tractor-trailer in Seaford, Delaware, when he was involved in an accident with a car that had run a stop sign. Bray owned the tractor and had leased it to U.S. Lines Trucking. The tractor was pulling a semi-trailer owned by U.S. Lines and insured by the Insurance Company of the State of Pennsylvania (hereafter Pennsylvania, although the company is not an agency of the Commonwealth of Pennsylvania).
 
 
 3
 Bray had no insurance on his tractor. Title 49 C.F.R. Sec. 1057.12(j) required U.S. Lines, lessee of the tractor, to maintain insurance for the protection of the public during the period of the lease. The insurance provided by the automobile involved in the accident is insufficient to pay for Bray's medical expenses and lost wages. Bray therefore sought a declaratory judgment to establish his right to underinsurance coverage that he contends Virginia law required Pennsylvania to include in its policy on the U.S. Lines semi-trailer. Jurisdiction is based on diversity of citizenship.
 
 
 4
 At the time of the accident, U.S. Lines had a liability policy for $1,000,000 issued by Pennsylvania to comply with Interstate Commerce Commission regulations. See 49 C.F.R. Sec. 1043.2(b)(2)(C) (1985). The policy itself explicitly provided only $15,000 per person and $30,000 per accident underinsurance motorist coverage.
 
 
 5
 The district court held that the policy provided no underinsured motorist benefits to Bray either by the policy's terms or by statute. Bray v. Insurance Co. of Pennsylvania, 705 F.Supp. 1145, 1148 (E.D.Va.1989). Bray appeals the declaration that the Pennsylvania policy affords him no coverage. Pennsylvania cross-appeals, urging alternative grounds for affirming the district court's judgment.
 
 
 6
 The district court found that the U.S. Lines trailer was principally garaged in Virginia. Virginia Code Sec. 38.1-21, recodified as Sec. 38.2-124 (1990 repl. vol.), includes a semi-trailer in its definition of a motor vehicle for insurance purposes. The Pennsylvania policy does not significantly differ from the statute. It defines "auto" to include a semi-trailer.
 
 
 7
 Virginia does not require a trucking company to carry insurance. The trucker may satisfy proof of financial responsibility by electing to be self-insured and filing an approved surety bond or other security. Secs. 56-299--56-301. If the trucker does not elect to be self-insured, it must carry insurance. Sec. 56-299. At the time of the accident, Virginia law required that every insurance policy issued to the owner of a motor vehicle principally garaged in the state shall provide both personal injury liability coverage in the amount of $25,000 for one person, $50,000 for two or more persons injured in the same accident, and an equal amount of uninsured, which includes underinsured, motorist coverage. Sec. 46.1-1(8), recodified as Sec. 46.2-100; Sec. 38.1-381(a) and (b), recodified as Sec. 38.2-2206. Virginia law also provided that motorists who carried more than $25,000/$50,000 liability coverage would receive underinsured motorist coverage equal to their liability coverage, unless they specifically rejected this amount of underinsured motorist coverage within 20 days of the issuance or renewal of the policy. The statute required insurance carriers to give notice of this option to their insured. Secs. 38.1-380.2B, recodified as Secs. 38.2-2202(B), 38.1-381(b). Pennsylvania did not give U.S. Lines notice about the option, nor did U.S. Lines advise Pennsylvania that it rejected uninsurance coverage in an amount equal to its liability coverage.
 
 
 8
 Each provision of the Virginia motor vehicle statute "is as much a part of the policy as if incorporated therein." State Farm Mut. Auto. Ins. Co. v. Duncan, 203 Va. 440, 443, 125 S.E.2d 154, 157 (1962); accord White v. National Union Fire Ins. Co., 715 F.Supp. 1339 (W.D.Va.1989), aff'd, 913 F.2d 165 (4th Cir.1990). Therefore, if the plain text of Virginia's motor vehicle insurance statutes is applied to the facts of the case, Pennsylvania afforded U.S. Lines uninsured motorist coverage in the amount of $1,000,000 on the semi-trailer involved in the accident that injured Bray.
 
 II
 
 9
 Pennsylvania contends that for several reasons Virginia law does not obligate it to furnish U.S. Lines $1,000,000 underinsured motorist coverage and that, in any event, Bray is not entitled to the benefits of such coverage.
 
 
 10
 * Bray, Pennsylvania argues, lacks standing to sue because only U.S. Lines, the named insured, can contest alleged deficiencies in the policy. Pennsylvania cites Gast v. Nationwide Mut. Fire Ins. Co., 516 So.2d 112 (Fla.App.1987), which held that an employee could not complain about deficiencies in his employer's uninsured motorist policy. But see Quirk v. Anthony, 563 So.2d 710, 714-15 (Fla.App.1990) (disagreeing with Gast ).
 
 
 11
 The district court properly rejected this defense. Va.Code Sec. 38.1-381(c) defines the term "insured" as used in the context of uninsured motorist coverage to include "any person who uses, with the consent, expressed or implied, of the named insured, the motor vehicle to which the policy applies." The Supreme Court of Virginia, construing the uninsured motorist statute, emphasized that it is the statute that affords a permissive user protection. The Court stated:
 
 
 12
 It is our opinion that, as to a permissive user of an insured vehicle, the legislature intended, in the uninsured motorist statute, to provide protection against an injury which occurs to one while using such vehicle.
 
 
 13
 Insurance Co. of North America v. Perry, 204 Va. 833, 838, 134 S.E.2d 418, 421 (1964). Bray's reliance on the statute affords him standing. In White, we sustained a judgment in an action based on the uninsured motorist statute by an employee who was using her employer's car. In White, as here, the insured did not specifically reject the increased coverage. 913 F.2d at 169. In view of Quirk, Perry, and White, we decline to follow the Florida decision on which Pennsylvania relies.
 
 B
 
 14
 Pennsylvania argues that since Bray was operating his own tractor, he cannot recover.
 
 
 15
 The flaw in Pennsylvania's argument is that Bray bases his claim on the statutory requirement of coverage for the semi-trailer. He was a permissive user of the semi-trailer because he was using it to carry U.S. Lines cargo at the time of the accident. A towed vehicle is a "used" vehicle. American Fire & Casualty Co. v. Allstate Ins. Co., 214 F.2d 523, 524-25 (4th Cir.1954); see also Ryder Truck Rental, Inc. v. U.S. Fidelity and Guaranty Co., 527 F.Supp. 666, 669 (E.D.Mo.1981) ("accident involving a tractor-trailer unit 'arises out of' the use of both.").
 
 C
 
 16
 The district court did not err by rejecting Pennsylvania's argument that Sec. 56-300 exclusively governs the insurance requirements of motor carriers. This section requires truckers to keep in force all liability insurance or bonds in the amount required by the State Corporation Commission, and it limits the Commission's authority to require insurance higher than the amount stipulated by the statute. Section 56-300 does not purport to govern uninsured motorist coverage. Pennsylvania cites no case excluding truckers from Virginia's uninsured motorist coverage.
 
 D
 
 17
 The Pennsylvania policy provided coverage for vehicles "which, because of the law of the state where they are licensed or principally garaged, are required to have and cannot reject uninsured motorist insurance." The policy limits for uninsured motorist coverage, however, were only $15,000/$30,000, which were far less than that required by Virginia law. Nevertheless, Pennsylvania relies on U.S. Lines' acceptance of that coverage as evidence of U.S. Lines' affirmative decision to reject coverage equal to its liability coverage.
 
 
 18
 We recently found unacceptable a similar argument in a case that disclosed that the insured had not rejected the optional uninsured motorist coverage equal to its liability coverage. Explaining the requirement of the statute, we said:
 
 
 19
 Information that supports an inference by the insurer that the insured intends to reject a default level of coverage does not suffice, under Virginia law, as an actual "rejection" of that coverage. The statute's plain language explicitly required [the insured] to reject the default coverage by notifying [the insurer] of that rejection. Furthermore, the law's explicit rejection requirement is consistent with its purpose of affording adequate protection to those injured by underinsured motorists. See Grossman v. Glens Falls Ins. Co., 211 Va. 195, 176 S.E.2d 318 (1970).
 
 
 20
 White, 913 F.2d at 169. We find no merit in Pennsylvania's claim that it met the requirements of Virginia's uninsured motorist law.
 
 E
 
 21
 The notice that insurers are required to give to their insureds states in part: "If you have purchased liability coverage that is higher than that required by law," the uninsured coverage will equal the liability coverage if not rejected. Va.Code Sec. 38.1-380.2B. Pennsylvania argued successfully in the district court that the law mentioned in the notice referred to ICC regulations that required $1,000,000 liability coverage. Since the policy afforded this amount of liability coverage, Pennsylvania claims that U.S. Lines did not have "liability coverage that is higher than that required by law." Consequently, says Pennsylvania, the policy does not have to provide $1,000,000 uninsured motorist coverage.
 
 
 22
 We cannot accept Pennsylvania's argument. The notice does not explicitly specify the law of any jurisdiction. It simply gives general information in a few sentences about uninsured motorist coverage. To determine what law the statute specifies, one must read the statute. In Virginia Code Sec. 38.1-381(b) the law is explicitly stated to be Sec. 46.1-1(8) of the Code, which fixed minimum limits of financial responsibility to be $25,000/$50,000. If the insured has purchased more liability coverage than $25,000/$50,000, the statute provides that uninsured motorist coverage will equal the liability coverage unless the insured rejects the enlarged coverage. U.S. Lines purchased more than $25,000/$50,000 liability coverage, and, consequently, the enlarged uninsured coverage applies to the semi-trailer garaged in Virginia. The statute does not exclude truckers whether interstate or intrastate. It applies to both.
 
 F
 
 23
 Pennsylvania contends that the ICC's regulation of insurance for interstate carriers preempts any state regulation. It asserts that the ICC is the exclusive regulator of insurance for interstate carriers. ICC regulations require interstate truckers to carry liability insurance or furnish other proof of financial responsibility in amounts prescribed by the Commission. 49 C.F.R. part 1043. The regulations neither require a trucker to carry uninsured motorist coverage nor provide that the trucker need not carry it. Since the regulations are silent about uninsured motorist coverage, there is a presumption against preemption. The presumption is strong when the state regulates matters of health, safety, and "state remedies like tort recoveries." See Abbott v. American Cyanamid, 844 F.2d 1108, 1112 (4th Cir.1988). Pennsylvania has not cited a case in point in support of its argument, although for years many states have required uninsured motorist insurance. Nor has Pennsylvania furnished any rational explanation why Congress or the ICC would intend to prohibit states from requiring uninsured motorist coverage on motor vehicles principally garaged in the state. Liability coverage required by the ICC and uninsured motorist coverage are complementary--not antagonistic--types of insurance. There is no federal preemption of the Virginia law.
 
 G
 
 24
 In a related issue, Pennsylvania contends that Virginia's requirement of underinsured motorist coverage violates the interstate commerce clause because it subjects interstate carriers to a heavier burden than intrastate carriers. U.S. Const. art. I, Sec. 8. Pennsylvania argues that interstate carriers are required to have $1,000,000 of liability coverage, whereas intrastate carriers are required to have only $500,000. Pennsylvania complains that interstate carriers are, therefore, automatically liable for an additional $500,000 of underinsured motorist coverage.
 
 
 25
 The interstate commerce clause requires a general balancing of state and national interests to determine the validity of local regulations. The Supreme Court discussed the balancing in Pike v. Bruce Church, Inc., 397 U.S. 137, 142, 90 S.Ct. 844, 847, 25 L.Ed.2d 174 (1970):
 
 
 26
 Where a statute regulates even-handedly to effectuate a legitimate local public interest, and its effects on interstate commerce are only incidental, it will be upheld unless the burden imposed on such commerce is clearly excessive in relation to the putative local benefits.
 
 
 27
 Such a balancing shows that Virginia's requirements do not violate the commerce clause. The burden on interstate carriers is not significantly higher than on intrastate carriers. Virginia never requires interstate carriers to have more underinsured motorist coverage than intrastate carriers. Virginia required only $25,000/$50,000 in underinsured motorist coverage whether the insured operates interstate or exclusively intrastate. Virginia only requires that underinsurance coverage equal liability insurance when the insured--whether an interstate or intrastate trucker--has not specifically rejected the enlarged coverage.
 
 H
 
 28
 Pennsylvania contends that imposing underinsurance coverage in the amount of $1,000,000 will impair the obligation of contracts. U.S. Const. art I, Sec. 10.
 
 
 29
 To violate the contracts clause the legislature must alter an existing contract. Ogden v. Saunders, 25 U.S. (12 Wheat.) 213, 264-65, 6 L.Ed. 606 (1827). The Virginia statute creating the obligation was enacted in 1982. It applied to all policies issued or renewed after January 1, 1983, long before Pennsylvania issued the U.S. Lines insurance policy.
 
 III
 
 30
 We find no merit in the other issues discussed by Pennsylvania. The judgment of the district court is reversed, and the case is remanded with directions to the district court to issue a declaratory judgment consistent with this opinion. If necessary, the district court should also determine issues of primary and secondary coverage, or pro rata coverage, in view of any other uninsured motorist coverage that may be available to Bray.