983 F.2d 1055
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Mark Lynn ELLIOTT, Plaintiff-Appellant,
v.
LIBERTY MUTUAL INSURANCE COMPANY, Defendant-Appellee.
 No. 91-1264.
 United States Court of Appeals,
Fourth Circuit.
 Argued: October 1, 1992
Decided: January 7, 1993
 
 Appeal from the United States District Court for the Eastern District of Virginia, at Norfolk.
 John Webb Drescher, BREIT, DRESCHER & BREIT, for Appellant.
 Alan Brody Rashkind, FURNESS, DAVIS, RASHKIND & SAUNDERS, P.C., for Appellee.
 Billie Hobbs, BREIT, DRESCHER & BREIT, for Appellant.
 E.D.Va.
 AFFIRMED.
 Before ERVIN, Chief Judge, LUTTIG, Circuit Judge, and TRAXLER, United States District Judge for the District of South Carolina, sitting by designation.
 PER CURIAM:
 
 OPINION
 
 1
 Mark Lynn Elliott ("Elliott") appeals from a district court order denying his request for declaratory relief and ordering judgment in favor of Liberty Mutual Insurance Company ("Liberty Mutual"). The district court held that Elliott could not recover under his employer's uninsured and underinsured ("UM") automobile insurance policy because his employer had effectively rejected carrying UM coverage in amounts equal to the limit of its liability coverage ("full UM coverage"). Further, the district court held that a previous increase in the employer's liability coverage, along with an accompanying increased premium, did not create a new policy. Since under Virginia law an insured only is required to reject full UM coverage once-when procuring a new policy-the district court concluded that Elliott's employer was not required to reject full UM coverage following the liability coverage increase. We agree and, therefore, affirm.
 
 I.
 
 2
 We begin by noting the applicable standard of review. Because the parties stipulated the relevant facts, our only inquiry concerns state law interpretations made by the district court. The district court's state law determinations are reviewed de novo. In conducting a de novo review, an appellate court must carefully consider a district court's legal analysis of state law questions. Salve Regina College v. Russell, U.S., 111 S.Ct. 1217, 1221 (1991).
 
 II.
 
 3
 Under Virginia law one must carry both liability and UM insurance coverage, although not necessarily in equal amounts. For example, one may elect UM coverage at the minimum mandatory financial responsibility limits, yet purchase liability coverage in a much greater amount. Such a choice appears simple enough; but due to the Virginia legislature's penchant for constantly amending its insurance laws, this choice can become complicated.
 
 
 4
 In 1981, Virginia enacted a notice statute which required all auto insurance policies (originals and renewals) to contain a legend which alerted an insured that full UM coverage could be purchased. The next year, 1982, the legislature transformed the notice statute into a self-operating full UM coverage law: for all new policies, an insured had to affirmatively reject full UM coverage; otherwise, full UM coverage automatically attached to the policy. In 1986, the statute was once again amended, as well as re-codified as Va. Code Ann. § 38.22202(B) ("UM statute"). Unlike the 1982 amendment, the 1986 amendment made no substantive change in the law; instead, it reworded a portion of the statute-insurance premiums "will" increase (rather than the previous wording of "may" increase) if an insured fails to reject full UM coverage within the specified time period. Id. As before, with respect to a new policy, "unless the insured rejects the additional uninsured motorists insurance coverage by notifying the insurer as provided in subsection B ofs 38.2-2202," the insured's UM coverage shall equal his liability coverage. Va. Code Ann. § 38.2-2206. Under § 38.2-2202(B), the insured has twenty days from the mailing of the new policy to reject full UM coverage, and "[a]fter twenty days, the insurer shall be relieved of the obligation ... to attach or imprint the foregoing statement to any subsequently delivered renewal policy...." Id. Accordingly, under Virginia law, the rejection requirements of the UM statute do not apply to renewal policies.
 
 III.
 
 5
 The relevant facts are stipulated. In 1989, Elliott, then an employee of Yoder Dairies ("Yoder"), was seriously injured in an automobile accident while operating a Yoder delivery truck within the scope of his employment. Yoder maintained an automobile insurance policy with Liberty Mutual, with Elliott insured under the policy. Elliott was not at fault in the accident and his medical expenses quickly exhausted the tortfeasor's liability coverage of $100,000. Thereafter, Elliott filed suit against the tortfeasor and, in accordance with Virginia law, also served Liberty Mutual as the applicable UM coverage carrier. Elliott settled the action against the tortfeasor for $850,000. Unfortunately for Elliott, Yoder's 1989 auto policy, as written by Liberty Mutual, only provided UM coverage of $60,000, combined single limits.
 
 
 6
 The relationship between Liberty Mutual and Yoder had commenced with an automobile policy in 1975. For all relevant years, the same Liberty Mutual sales representative handled the Yoder account and dealt directly and exclusively with the same general manager of Yoder. The district court found that it was the understanding of the parties that each year the auto policy was renewed.[1] For the policy years of 1982, 1983, and 1984, Yoder's general manager, after being advised of the UM statute by Liberty Mutual's sales representative, executed a form rejecting full UM coverage while selecting UM coverage at the minimum mandatory financial responsibility limits ($60,000 combined single limits). Beginning with the 1987 policy, Yoder increased its liability coverage from $500,000 to $1,000,000. The UM coverage, however, remained at the minimum limits.
 
 
 7
 At issue is the amount of Yoder's 1989 UM coverage. Under Virginia law, if a tortfeasor's liability coverage exceeds an insured's UM coverage, the insured[2] cannot recover under the UM portion of his policy. Accordingly, because the tortfeasor's liability coverage surpassed Yoder's stated UM coverage, Elliott was denied recovery under Yoder's UM policy. In an attempt to recover under Yoder's policy, Elliott filed a declaratory judgment action alleging that the 1989 stated UM limits, as written and agreed upon by the parties, were invalid due to Liberty Mutual's alleged failure to comply with Virginia's UM statute. The direct consequence of Liberty Mutual's alleged noncompliance, Elliott argued, was that Yoder's 1989 UM coverage rose to an amount equaling its liability coverage-$1,000,000. The district court found for Liberty Mutual, and Elliott appeals.
 
 IV.
 A.
 
 8
 At the trial level, and again on appeal, Elliott contends that Liberty Mutual failed to comply with the notice provisions of § 38.2-2202(B), thereby nullifying Yoder's rejection of full UM coverage. The district court concluded that since Yoder last affirmatively rejected full UM coverage on December 29, 1983, Liberty Mutual's compliance with the UM statute on that date had to be scrutinized. The district court then held that Yoder effectively rejected full UM coverage on December 29, 1983. In reaching its conclusion, the district court found that the relevant testimony "clearly demonstrate[d] that Yoder was advised it could reject full UM coverage, and the evidence is undisputed that Yoder did indeed reject such coverage."
 
 
 9
 Despite the undisputed fact that Yoder consistently rejected full UM coverage, Elliott argues that Liberty Mutual's failure to revise its notification form to adopt the precise statutory language of the UM statute, as amended in 1986,[3] voided the application of Yoder's December 29, 1983, rejection of full UM coverage to any postamendment policy renewals. In light of this court's opinion in Insurance Co. of N. Am. v. MacMillan, 945 F.2d 729 (4th Cir. 1991), the district court rejected Elliott's "faulty quotation" argument. In MacMillan, this court, construing the same Virginia statute, concluded that when an insured clearly is given a choice to accept or reject full UM coverage, and chooses to reject, the rejection is effective despite the insurer's failure to issue a notice precisely as required by § 38.2-2202. Id. at 731.
 
 
 10
 We agree with the district court's conclusion that Yoder effectively rejected full UM coverage even if Liberty Mutual did not comply with the precise language of the UM statute.[4] As the district court correctly observed, "MacMillan focused on the insured's rejection of UM coverage rather than on the insurer's duty to provide statutory notice." Additionally, Elliott's position would require each insurer to revise and reissue a notice (and rejection form) to every insured who rejected full UM coverage before the effective date of the 1986 amendment to the UM statute, even if the original notice complied with the law in effect at the time the rejection was made. Considering the cosmetic nature of the 1986 change in the UM statute, such a legislative intent cannot be inferred, and indeed, Elliott is unable to cite any authority for such a proposition.
 
 B.
 
 11
 Elliott further argues that the district court erred in finding that Yoder's 1987 policy was a renewal policy instead of a new policy. As mentioned before, the 1987 policy increased Yoder's liability coverage from $500,000 to $1,000,000. Elliott contends that such a substantial increase in coverage in exchange for an additional premium created a new policy. Great American Ins. v. Cassell, 15 Va. Cir. 214, 223 & 226 (Roanoke, 1988), appeal granted on other grounds and aff'd, 389 S.E.2d 476 (Va. 1990). Because a new policy was created, Elliott argues, the UM statute required Liberty Mutual to notify Yoder of its right to reject full UM coverage. Consequently, Elliott contends that Liberty Mutual's failure to give such notice resulted in an automatic increase in Yoder's UM coverage up to the level of its increased liability coverage. Elliott's "new policy" argument presents a much closer question than his "faulty quotation" claim. Nonetheless, we agree with the district court's determination that the 1987 policy was a renewal policy.
 
 
 12
 First, as the district court noted, the Supreme Court of Virginia has not ruled on the question of whether increasing the liability coverage of an existing motor vehicle insurance policy in exchange for an additional premium creates a new policy. Second, although the state trial court in Cassell held that an increase in liability coverage from $500,000 to $1,000,000 did create a new policy, as the district court thoroughly discussed, Cassell is distinguishable in a number of respects. Most importantly, the conclusion in Cassell that a substantial increase in coverage creates a new policy is arguably dicta because the trial court also concluded that the insurer had contractually obligated itself to give the insured notice of the right to reject full UM coverage on all new policies and renewals. As such, the insurer was bound by its failure to do so: "whether considered a renewal policy or a new policy, since no notice was given, the automatic increase of uninsured motorist protection attaches, commitment to give such notice on renewals having been voluntarily made by the [insurer]...." Id. at 226 (emphasis added).
 
 
 13
 The term "renewal" is not defined in the UM statute. It is defined, however, in a nearby section of Virginia's insurance code:
 
 
 14
 "Renewal" or "to renew" means (i) the issuance and delivery by an insurer of a policy superseding at the end of the policy period a policy previously issued and delivered by the same insurer, providing types and limits of coverage at least equal to those contained in the policy being superseded,
 
 
 15
 Va. Code Ann. § 38.2-2212. Although this definition of "renewal" does not apply specifically to the UM statute, it does apply to sections of the Virginia insurance code which deal with liability and uninsured insurance coverage on motor vehicles. The district court found this definition of "renewal" persuasive. Accordingly, as Yoder's 1987 policy "provid [ed] types and limits of coverage at least equal to those contained in the policy being superseded," the district court held that the 1987 policy was a renewal policy. We agree with the district court's conclusion that the definition of "renewal" found in the Virginia insurance code is a stronger indicator of what constitutes a renewal under the UM statute than the Cassell case.
 
 B.
 
 16
 Elliott's two remaining grounds of appeal are without merit. First, Elliott argues that the district court erred in failing to find that a facial ambiguity somehow tainted Liberty Mutual's 1983 election form[5] because it did not explain the term "financial responsibility limits." Assuming, arguendo, that the form was facially ambiguous does not aid Elliott because the unequivocal testimony of Yoder's general manager shows that he knew exactly what the term meant-an election to carry UM coverage at the lowest level allowed by law, whatever that amount might be. Second, Elliott, citing White v. National Union Fire Ins., 913 F.2d 165 (4th Cir. 1990), contends that since Liberty Mutual failed to give notice in strict accordance with the UM statute, it is irrelevant that the parties intended to reject full UM coverage. Initially, this court notes that this assertion is simply a restatement of Elliott's already rejected "faulty quotation" argument. See supra part III.A. Elliott correctly points out that under Virginia law an inference that the parties intended to reject full UM coverage does not suffice as an actual rejection. White, at 169. This case, however, does not involve any inferences-every time Yoder was given an option to accept or reject full UM coverage, it rejected the extra coverage. As such, White is not applicable.
 
 V.
 
 17
 For the foregoing reasons, the judgment of the district court is affirmed.
 
 AFFIRMED
 
 
 [1]
 Further evidence that the parties treated all succeeding policies as renewals is the fact that since 1975 Yoder has filled out only one application for insurance, that being the original one
 
 
 [2]
 Virginia statutorily defines"insured" for UM coverage purposes as "the named insured and, ... any person who uses the motor vehicle to which the policy applies, with the expressed or implied consent of the named insured." Va. Code Ann. § 38.2-2206(B). In this context, Yoder and Elliott are considered the "insured" interchangeably
 
 
 [3]
 As mentioned before, the 1986 amendment changed the UM statute to read that insurance premiums "will" increase if an insured did not reject full UM coverage, revising the previous version of the UM statute which declared that insurance premiums "may" increase if an insured failed to reject full UM coverage
 
 
 [4]
 We note that the notice form which actually accompanied the rejection executed on December 29, 1983, contained word for word, with some additions but no deletions, the language required by the UM statute then in effect. Further, Elliott does not contend that the notice actually used was defective
 
 
 [5]
 This is the election/rejection form executed by Yoder's general manager 5405 35 10 on December 29, 1983. See supra part III.A