Frank E. ARNOLD, Plaintiff,

v.

LIBERTY MUTUAL INSURANCE COMPANY, a Massachusetts Corporation, and State Farm Mutual Automobile Insurance Company, an Illinois Corporation, Defendants.

Civ. A. No. 92–0827.

United States District Court,
W.D. Virginia,
Roanoke Division.

Jan. 7, 1994.

Peter Brent Brown, Carter, Brown & Osborne, P.C., John Buford Ferguson, Roanoke, VA, Paul H. Anderson, Blue Cross and Blue Shield of Virginia, Richmond, VA, for plaintiff.

Phillip Verne Anderson, Gentry, Locke, Rakes & Moore, Roanoke, VA, for Liberty Mut. Ins. Co.

John Dickens Eure, Robert Stewart Ballou, Johnson, Ayers & Matthews, Roanoke, VA, for State Farm Mut. Automobile Ins. Co.

## CORRECTED MEMORANDUM OPINION

WILSON, District Judge.

Frank Arnold was injured in a motor vehicle accident while operating a tractor-trailer belonging to his employer, Blue Ridge Transfer Company ("Blue Ridge"). Arnold brought this declaratory judgment action against his personal insurer, State Farm Mutual Automobile Insurance Company ("State Farm"), and Blue Ridge's insurer, Liberty Mutual Insurance Company ("Liberty Mutual"), to determine the allocation and amounts of uninsured and underinsured motorist coverage. Arnold is a citizen of Virginia; Liberty Mutual is incorporated and has its principal place of business in Massachusetts; and State Farm is incorporated in and has its principal place of business in Illinois. There is more than $50,000.00 in controversy exclusive of interest and costs. Accordingly, there is diversity jurisdiction pursuant to 28 U.S.C. § 1331. The pertinent facts have been stipulated. The matter is before the court on cross motions for summary judgment on the issue of whether in 1985 Blue Ridge effectively rejected its liability policy limits as its underinsured limits. The court finds that Blue Ridge effectively rejected its policy limits and chose instead Virginia's financial responsibility limits.

### I.

On July 7, 1990 Arnold was injured in a motor vehicle accident with Thelma Weinrich in Cumberland County, Pennsylvania. Arnold was operating a tractor-trailer principally garaged and located in Virginia and owned by his employer, Blue Ridge, a Virginia corporation that transfers goods in interstate commerce. Arnold was operating the tractor-trailer within the scope of his employment.

Weinrich was the named insured under a Liberty Mutual policy with liability coverage limits for bodily injury of $50,000.00 each person and $100,000.00 each accident. Arnold was the named insured under a State Farm Policy with uninsured and underinsured motorist coverage limits of $100,000.00 each person and $300,000.00 each accident. Arnold was also insured under a Liberty Mutual truckers' policy issued to Blue Ridge with liability limits of $2,000,000.00. Liberty Mutual initially issued the truckers' liability policy effective September 1, 1985 with liability limits of $1,000,000.00. Blue Ridge completed its application for the truckers' policy in Virginia and delivered it to one of Liberty Mutual's offices in Virginia.

In connection with the application process, Liberty Mutual notified Blue Ridge that if Blue Ridge had purchased liability coverage higher than required by law, then its underinsured and uninsured motorist coverage would increase to that amount unless it rejected the higher limits and selected lower limits within 20 days. Liberty Mutual provided Blue Ridge a form to make its choice. The form was conspicuously styled "Virginia Uninsured Motorist/Underinsured Motorist

Coverage." The form set forth the available coverage limit options, each with a corresponding box to mark if that option was selected. Two of the coverage limit options were: "Policy Limits—Bodily Injury and Property Damage" and "Financial Responsibility Limits." Blue Ridge marked the box indicating that it was electing "Financial Responsibility Limits" for its underinsured and uninsured coverage limits. Blue Ridge selected uninsured and underinsured motorist coverage at the lowest permissible level in each state in which it was afforded the opportunity to select.

Liberty Mutual also provided Blue Ridge a separate written notice of the United States Department of Transportation's insurance requirements. The notice apprised Blue Ridge of the Department of Transportation's rules which establish "minimum levels of financial responsibility for motor carriers" for "public liability." The notice contained the Department of Transportation's schedule of financial responsibility limits for the various types of carriers and apprised Blue Ridge that those requirements could be satisfied if Blue Ridge purchased an endorsement to its insurance policy or obtained a surety bond. Liberty Mutual also provided Blue Ridge a corresponding form to make its selection. The form was conspicuously styled "Motor Carrier Insurance Report Form." Blue Ridge completed the form directing Liberty Mutual to add the "Motor Carrier Endorsement" to the Blue Ridge policy, indicating its type of common carriage and requesting Liberty Mutual to provide the statutorily mandated liability limits—$1,000,000.00—for its type of carriage.

## II.

Arnold and State Farm contend that Blue Ridge has $1,000,000 in uninsured and underinsured coverage under Liberty Mutual's policy. They make two arguments in support of that contention. First, Arnold and State Farm argue that the "financial responsibility limits" language of the uninsured and underinsured limits selection form Liberty Mutual provided Blue Ridge was ambiguous in light of Liberty Mutual's concurrent notice to Blue Ridge of the Department of Transportation's insurance requirements and that that ambiguity must be resolved in favor of higher coverage. Second, Arnold argues that Blue Ridge's selection of the financial responsibility limits was an insufficient rejection under Virginia law of the higher limits. The court is not persuaded by either argument.

In accordance with Virginia Code § 46.2–472, the limits of each liability policy issued to the owner of a motor vehicle principally garaged or used in Virginia must at least equal Virginia's financial responsibility limits for bodily injury of $25,000 each person and $50,000 each accident.[1] The policy also must provide uninsured and underinsured coverage with at least those limits. Va.Code § 38.2–2206. If an insured purchases liability coverage with greater limits, his uninsured and underinsured coverage limits will automatically increase to the increased liability limits unless he rejects those higher limits within 20 days. The insurer must notify the insured of its options.

Section 1 of the Motor Carrier Act of 1980, 49 U.S.C. § 10927, and the Department of Transportation's implementing regulations, 49 C.F.R. § 387.1 *et seq.*, also require each motor carrier to obtain liability coverage or a security bond in a specified amount that depends on the type of carriage and goods transported. Blue Ridge's type of carriage required liability protection of at least $1,000,000. Liberty Mutual was obligated to notify Blue Ridge of that requirement by Department of Transportation regulations just as it was obligated to notify Blue Ridge of its uninsured and underinsured coverage options in accordance with Virginia law.

### A. The Alleged Ambiguity

◼ Blue Ridge's coverage selection in response to each required notification was made on a corresponding form that was conspicuously identified. When Blue Ridge selected "financial responsibility limits" on the form conspicuously styled "Virginia Uninsured/Underinsured Motorist Coverage," it

---

1. When Blue Ridge's policy was issued in 1985, coverage of at least $10,000 for property damage also was required. That requirement was raised to $20,000 in 1989. 1989 Va.Acts 621.

knew or at least should have known that it was selecting Virginia's financial responsibility limits. "Financial responsibility" has a well defined and commonly understood meaning in Virginia law:

> "Financial responsibility" means the ability to respond in damages for liability thereafter incurred arising out of the ownership, maintenance, use, or operation of a motor vehicle, in the amounts provided for in § 46.2–472, [for bodily injury—$25,000 each person and $50,000 each accident].

Va.Code § 46.2–100. That law " 'is as much a part of the policy as if incorporated therein.' " *Bray v. Insurance Co. of Pennsylvania,* 917 F.2d 130, 132 (4th Cir.1990) (quoting *State Farm Mutual Auto. Ins. Co. v. Duncan,* 203 Va. 440, 125 S.E.2d 154, 157 (1962)). In context, therefore, the selection was not ambiguous.

Arnold and State Farm contend that the court is precluded by *White v. National Union Ins. Co.,* 913 F.2d 165 (4th Cir.1990) and *Bray v. Insurance Co. of Pennsylvania,* 917 F.2d 130 (4th Cir.1990) from referring to extraneous sources, including Virginia law, for the meaning of "financial responsibility limits." The court believes that Arnold and State Farm construe that precedent too broadly.[2] The insured did not reject its policy limits as its uninsured and underinsured limits in either *White* or *Bray.* In *White* the insured signed and returned the uninsured and underinsured coverage form without making a selection. In *Bray* the insured was not notified of its uninsured or underinsured coverage options and likewise made no selection whatsoever. In each case the Court of Appeals did nothing more than reaffirm the principle that there must be a rejection or

the uninsured and underinsured limits will equal the liability limits; intent to reject is insufficient. *See generally Insurance Co. of North America v. MacMillan,* 945 F.2d 729, 731 (4th Cir.1991). In contrast, Blue Ridge rejected its liability limits.[3]

### B. Rejection of Policy Limits

Arnold also maintains that the Liberty Mutual form is "defective" because it "does not provide for an explicit rejection." Arnold's Memorandum at 4. The court disagrees. Substantial compliance with the law is all that is required. The form permits the insured to select among several options for its uninsured or underinsured limits, including "financial responsibility limits" and policy limits. After having been given the option of choosing between "financial responsibility limits" and policy limits, an insured that selects "financial responsibility limits" has fairly rejected policy limits. Any other conclusion would demand hypertechnical compliance, not substantial compliance.

### III.

For the reasons stated the court will enter a declaratory judgment, declaring that Liberty Mutual affords uninsured and underinsured motorist coverage for bodily injury and property damage in the combined single limit of $70,000.

---

**2.** The Court of Appeals has not read *Bray* and *White* as broadly as Arnold and State Farm suggest. Indeed, the Court of Appeals looked to the named insured's understanding in selecting "financial responsibility limits" on an identical Liberty Mutual form in *Elliott v. Liberty Mutual Ins. Co.,* No. 91–1264, 1993 WL 2671, 1993 U.S.App. LEXIS 188 (4th Cir. Jan. 7, 1993):

> [The named insured's employee] argues that the district court erred in failing to find that a facial ambiguity somehow tainted Liberty Mutual's 1983 election form because it did not explain the term "financial responsibility limits." Assuming, arguendo, that the form was facially ambiguous does not aid Elliott because

the unequivocal testimony of [the named insured's] general manager shows that he knew exactly what the term meant—an election to carry UM coverage at the lowest level allowed by law, whatever that amount might be.

Although *Elliott* is an unpublished opinion and unpublished opinions are not binding precedent, they are entitled "to the weight they generate by the persuasiveness of their reasoning." *Hupman v. Cook,* 640 F.2d 497, 501 n. 7 (4th Cir.1981).

**3.** After the accident, Liberty Mutual mistakenly apprised the insured of the wrong underinsured limits. The court finds that mistake irrelevant.