39 F.3d 1175
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Frank E. ARNOLD, Plaintiff-Appellant,
v.
LIBERTY MUTUAL INSURANCE COMPANY, a Massachusetts
Corporation, Defendant-Appellee,
and
STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Defendant.
Frank E. ARNOLD, Plaintiff,
STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Defendant-Appellant,
v.
LIBERTY MUTUAL INSURANCE COMPANY, a Massachusetts
Corporation, Defendant-Appellee.
 Nos. 94-1165, 94-1175.
 United States Court of Appeals, Fourth Circuit.
 Argued September 28, 1994.
Decided October 27, 1994.
 
 Appeals from the United States District Court for the Western District of Virginia, at Roanoke. Samuel G. Wilson, District Judge. (CA-92-827-R)
 Argued: John Dickens Eure, Johnson, Ayers & Matthews, Roanoke, VA, for appellants.
 Argued: Phillip Verne Anderson, Gentry, Locke, Rakes & Moore, Roanoke, VA, for appellee.
 On brief: Robert S. Ballou, Johnson, Ayers & Matthews, Roanoke, VA, for appellant State Farm.
 On brief: P. Brent Brown, William A. Jennings, Carter, Brown & Osborne, P.C., Roanoke, VA, for appellant Arnold.
 On brief: Melissa Warner Scoggins, Gentry, Locke, Rakes & Moore, Roanoke, VA, for appellee.
 W.D.Va.
 AFFIRMED.
 Before HALL, HAMILTON, and MICHAEL, Circuit Judges.
 
 OPINION
 PER CURIAM
 
 1
 Frank Arnold (Arnold) and State Farm Mutual Automobile Insurance Company (State Farm) appeal the grant of summary judgment in favor of Liberty Mutual Insurance Company (Liberty Mutual) denying their claim for higher insurance coverage under Liberty Mutual's uninsured/underinsured motorist coverage issued to Arnold's employer, Blue Ridge Transfer Company (Blue Ridge). The district court concluded that under Virginia law the term "financial responsibility" was not ambiguous and that Blue Ridge effectively rejected uninsured/underinsured default coverage equal to its higher liability limits. We agree with both conclusions of the district court and therefore affirm.
 
 I.
 
 2
 The material facts are not disputed. Arnold, a tractor-trailer driver for Blue Ridge, was the named insured under his own State Farm policy with uninsured/underinsured motorist coverage limits of $100,000 per person and $300,000 per accident. Arnold was also insured under a Liberty Mutual truckers' policy issued to Blue Ridge with liability limits of $2,000,000. Liberty Mutual initially issued the trucker's liability policy effective September 1, 1985, with liability limits of $1,000,000.
 
 
 3
 Subsequently, and pursuant to amendments in Virginia insurance law with respect to raising motorists' coverage, Liberty Mutual advised Blue Ridge that if Blue Ridge purchased liability coverage higher than that required by law, then its uninsured/underinsured motorist coverage would increase to that amount unless Blue Ridge rejected the higher coverage and selected the lower limits within twenty days. See 6A Code of Virginia Sec. 38.2-2202(B) (Michie 1994). Liberty Mutual furnished Blue Ridge a form conspicuously entitled "Virginia Uninsured Motorist/Underinsured Motorist Coverage," which provided available coverage limit options, each with a corresponding box to check if that option was selected. Blue Ridge placed an "X" in the box marked "Financial Responsibility Limits." Accordingly, Liberty Mutual issued the policy with uninsured/underinsured coverage limits in the amended amount of $70,000, representing Virginia's financial responsibility limits in a single format. The record reveals that Blue Ridge selected uninsured/underinsured motorist coverage at the lowest permissible level in each state in which it was afforded the opportunity to select coverage limits.
 
 
 4
 Liberty Mutual also provided Blue Ridge a separate written notice of the United States Department of Transportation's (DOT) insurance requirements. This notice apprised Blue Ridge of the DOT's regulations, which established minimum levels of financial responsibility for public liability for motor carriers. This notice contained the DOT's schedule of financial responsibility limits for various types of carriers and apprised Blue Ridge that those requirements could be satisfied if Blue Ridge purchased an endorsement to its insurance policy or obtained a surety bond. As with the Virginia policy, Liberty Mutual furnished Blue Ridge a form entitled "Motor Carrier Insurance Request Form" for making its coverage limits with respect to its DOT insurance selections. Blue Ridge executed this form, requesting that Liberty Mutual add the endorsement to Blue Ridge's policy and provide the DOT-mandated liability limit of $1,000,000.
 
 
 5
 While driving a tractor-trailer in the scope of his employment, Arnold was injured in an accident in Pennsylvania. The tractor-trailer was owned by Blue Ridge and principally maintained in Virginia. Subsequent to the accident, Liberty Mutual agreed to pay $70,000 toward Arnold's expenses in accordance with the terms of the uninsured/underinsured coverage limits in the Virginia policy, rejecting Arnold's contention that it was obligated to pay the higher limit of $1,000,000. Liberty Mutual asserted that Blue Ridge's selection of "Financial Responsibility Limits" meant that Blue Ridge could and did choose the lowest amount of uninsured/underinsured coverage permissible under Virginia law. Arnold thereafter instituted suit against Liberty Mutual and State Farm, seeking a declaratory judgment of the allocation and amount of insurance available to him under the Liberty Mutual Virginia policy, but he did not assert a claim with respect to Liberty Mutual's DOT-mandated policy. The district court held that Liberty Mutual was obligated to pay $70,000. Arnold and State Farm appealed.
 
 II.
 
 6
 Before turning to the parties' contentions, we address our standard of review. The district court resolved the case on summary judgment, a legal conclusion over which this court exercises plenary review. See Cooke v. Manufactured Homes, Inc., 998 F.2d 1256, 1260 (4th Cir.1993). We must apply the same standard as used by the district court when reviewing a grant of summary judgment. See Farwell v. Un, 902 F.2d 282, 287 (4th Cir.1990). Accordingly, summary judgment was properly granted in favor of Liberty Mutual if there was no genuine issue of material fact and Liberty Mutual was entitled to judgment as a matter of law. See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). We review de novo the district court's analysis of state law. See Salve Regina College v. Russell, 499 U.S. 225, 231 (1991).
 
 
 7
 Virginia law provides that the limits of each liability policy issued to the owner of a motor vehicle principally maintained in Virginia must at least equal Virginia's financial responsibility limits with respect to bodily injury and accident. See 7 Code of Virginia Sec. 46.2-472 (Michie 1994). Additionally, the policy must provide uninsured/underinsured coverage equal at least to those limits. See 6A Code of Virginia Sec. 38.2-2206(A) (Michie 1994). If an insured elects to purchase liability coverage with greater limits, his uninsured/underinsured coverage limits automatically increase to his selected liability limits unless the insured rejects the higher limits within twenty days. See 6A Code of Virginia Sec. 38.2-2202(B) (Michie 1994). The insurer must notify the insured of its options. See id.
 
 
 8
 Like Virginia law, DOT regulations require motor carriers to secure liability coverage or a security bond, and here, Blue Ridge was required to obtain at least $1,000,000 in liability coverage. See 49 U.S.C.A. Sec. 10927(a) (West 1994); 49 C.F.R. Sec. 387.9 (1993). DOT regulations do not require carriers such as Blue Ridge to maintain uninsured/underinsured coverage in addition to public liability insurance. Liberty Mutual was obligated to apprise Blue Ridge of the DOT liability insurance requirements. See generally 49 C.F.R. Sec. 387.15 (1993).
 
 
 9
 While Arnold does not contend that he has a claim under Blue Ridge's DOT-mandated liability insurance, he and State Farm contend that Blue Ridge has $1,000,000 in uninsured/underinsured coverage under Liberty Mutual's policy, advancing two arguments in support of this contention. First, they posit that the term "Financial Responsibility Limits" on Liberty Mutual's Virginia form for selecting uninsured/underinsured coverage is ambiguous, particularly in light of Liberty Mutual's concurrently notifying Blue Ridge of the DOT's insurance requirements. Second, they assert that Blue Ridge's selection of the financial responsibility limits for its uninsured/underinsured coverage was an insufficient rejection under Virginia law of the higher coverage limits. Like the district court, we reject both contentions.
 
 A.
 
 10
 The selection forms provided to Blue Ridge by Liberty Mutual were conspicuously differentiated between the Virginia form and the DOT form for selecting DOT-mandated liability coverage. Like the district court, we are persuaded that when Blue Ridge selected "Financial Responsibility Limits" on the Virginia form, it knew that it was selecting Virginia's financial responsibility limits ($70,000) and did not confuse this with the DOT form for selecting the DOT-mandated liability coverage. After making this determination, the district court concluded that the term "financial responsibility" is clearly defined under Virginia law, see 7 Code of Virginia Sec. 46.2-100 (Michie 1994), and is simply not ambiguous. In reaching this conclusion, the district court, relying principally on Bray v. Insurance Co. of Pennsylvania, 917 F.2d 130 (4th Cir.1990), properly analyzed circuit precedent construing this term under Virginia law as used in the context of this litigation. We agree with the district court that the term "financial responsibility" is not ambiguous.
 
 B.
 
 11
 The district court next concluded that Blue Ridge's marking the "Financial Responsibility Limits" box on the Virginia form effected a sufficient rejection of the higher limits. This conclusion finds support in the case law. See, e.g., Guerrucci v. State Farm Mut. Automobile Ins. Co., 759 F.2d 1566 (11th Cir.1985); Wiard v. Phoenix Ins. Co., 310 S.E.2d 221, 223 (Ga.1983). Again, we agree with the district court that Blue Ridge's selecting the "Financial Responsibility Limits" box was a sufficient act to express its intent of choosing the lowest possible uninsured/underinsured coverage limits.
 
 III.
 
 12
 We have carefully considered the record, the briefs, and the parties' oral arguments. We are compelled to the conclusion that the district court properly held that the term "financial responsibility" is not ambiguous and that Blue Ridge effectively rejected the higher uninsured/underinsured coverage limits. Accordingly, we affirm on the reasoning of the district court. Arnold v. Liberty Mut. Ins. Co., CA92-0827 (W.D.Va. Jan. 10, 1994).
 
 AFFIRMED