## CIRCUIT COURT OF CHESTERFIELD COUNTY

Dale Hester

v.

State Farm Mutual
Automobile Ins. Co. et al.

December 3, 2001

Case No. CL01-702

BY JUDGE HERBERT C. GILL, JR.

The parties, by counsel, appeared before the Court on November 19, 2001, on the matter of four motions for summary judgment filed on behalf of the plaintiff, defendant Continental Casualty Company, defendant Carolina Telephone and Telegraph Company, and defendant State Farm Mutual Automobile Insurance Company. All parties were in agreement that there are no facts in dispute. Upon the completion of oral arguments by counsel, the Court took the matter under advisement.

After a careful review of the memoranda submitted, oral arguments, and case law, the Court has given consideration to the various motions and now rules as follows.

The Court must be mindful of the fact that the matter is presently before it on summary judgment. Virginia Supreme Court Rule 3:18 provides, "[s]ummary judgment shall not be entered if any material fact is genuinely in dispute." It is a drastic remedy available only when there are no factual disputes arising from the pleadings. *Slone v. General Motors Corp.*, 249 Va. 520, 522, 457 S.E.2d 51, 52 (1995). All counsel have stipulated that there are no facts in dispute. The Court agrees and accepts this stipulation.

The plaintiff filed a Motion for Declaratory Judgment alleging a controversy regarding the amount of the applicable coverage with Continental Casualty Company (Continental). Specifically, the Motion for Declaratory

Judgment asserts that the plaintiff is claiming that the insured, Sprint, did not reject the uninsured/underinsured motorist coverage for bodily injury equal to its liability coverage of $2,000,000. Accordingly, the plaintiff is asking the Court to enter judgment declaring the uninsured/underinsured bodily injury insurance limits to be $2,000,000. The defendant is claiming that the insured effectively rejected uninsured/underinsured bodily injury insurance limits equal to the $2,000,000 liability insurance limits and, instead, selected coverage equal to Virginia's financial responsibility limits of $25,000 per person.

Section 38.2-2206(A) of the Code of Virginia requires that uninsured motorist insurance limits, "shall equal but not exceed the limits of the liability insurance provided by the policy, unless any one named insured rejects the additional uninsured motorist insurance coverage by notifying the insurer as provided in Subsection B of § 38.2-2202." Section 38.2-2202(B) provides that the uninsured and underinsured motorist coverage will automatically increase to the limits of the liability coverage if the insured fails to notify the insurer within twenty days of the mailing of the policy or the premium notice. In the event the insured rejects the limits of the liability coverage, Code § 46.2-472 requires, as a minimum, that every motor vehicle owner's policy shall insure the insured or other person against loss in the amount of $25,000 for the bodily injury or death of any one person and $50,000 for the bodily injury or death of two or more persons.

In the matter before us, it is undisputed that the policy at issue contains liability coverage of $2,000,000. Accordingly, pursuant to Code § 38.2-2206, the uninsured motorist coverage shall equal the liability limits of $2,000,000 unless it is found that the insured, Sprint, rejected the additional coverage by notifying the insurer. The issue before us, then, is whether Sprint rejected the higher liability limits of $2,000,000.

In the policy at issue, the pertinent page contains the statement required by Code § 38.2-2202, notifying Sprint that the uninsured and underinsured motorist insurance coverage will increase to the limits of the liability coverage if the insurer is not notified within twenty days of the desire to reduce the coverage. The insured is then given the opportunity to select lower limits, thereby rejecting the liability limits for uninsured motorist coverage. The portion of the policy that is relevant in this matter appears as follows:

Uninsured motorist coverage will be afforded at limits equal to the policy's bodily injury liability limit. You have the option to select lower limits but not less than the financial responsibility requirements of this state.

[ ] I select uninsured/underinsured motorist coverage at limits not less than the financial responsibility requirements, not to exceed the bodily injury and property damage liability limits of the policy as indicated below.

Bodily Injury
Combined Single Limits $ _____        or Each Person $ _____
                                                  Each Accident $ _____
Property Damage
Each Accident $ _____

[ ] I select uninsured/underinsured motorist coverage at limits equal to the bodily injury and property damage liability limits of the policy.

When choosing between these two options, Sprint placed an "X" next to the first option. However, Sprint never provided the information required to make this selection complete. In unambiguous language, this option required Sprint to choose a limit, *any* limit, so long as it was not less than the financial responsibility requirements nor more than the bodily injury and property damage limits of the policy. Accordingly, Sprint was required to choose a limit somewhere between the financial responsibility limits and $2,000,000. Sprint did not specify the limit it desired. The Court cannot speculate as to whether Sprint intended to select a limit not less than the financial responsibility requirements, or a limit of $100,000, $500,000, or even $1,999,000. In fact, Sprint could have selected a limit of $2,000,000, thereby achieving the same result as if it had selected option number two. The choice was not completed and, thus, the rejection was not made.

In support of Continental's motion for summary judgment, counsel for Continental argues that the case of *Arnold v. Liberty Mutual Ins. Co.* presents facts remarkably similar to those of the matter before us. *Arnold v. Liberty Mutual Ins. Co.*, 866 F. Supp. 955 (W.D. Va. 1994), aff'd 39 F.3d 1175 (4th Cir. 1994) (unpublished). In *Arnold*, counsel argues, the insured was faced with two coverage limit options: "Policy Limits" and "Financial Responsibility Limits." Faced with these two choices, the insured marked the box for "Financial Responsibility Limits." *Id.*, at 957. The District Court in *Arnold* held that the insured had effectively rejected the higher limits by selecting financial responsibility limits rather than the policy limits. *Id.*, at 958.

In his brief, counsel for Continental attempts to persuade the Court that the facts of the instant case are "remarkably similar" to that of the *Arnold* Case by dividing option one, selected by Sprint, into two separate and distinct

options. Counsel states that Sprint had the following *three* options of selecting coverage:

(a) at limits not less than Virginia's financial responsibility requirements,

(b) at limits not less than Virginia's financial responsibility requirements at the specific limits that Sprint had indicated on its application, or

(c) at limits equal to the full bodily injury limits of $2,000,000.

In the policy at hand, however, option one clearly states, "I select uninsured/underinsured motorist coverage at limits not less than the financial responsibility requirements, not to exceed the bodily injury and property damage limits of the policy as indicated below." Despite counsel's noble effort, this option cannot be divided up into two choices. *If Continental intended for option one to consist of two options it could have avoided the ensuing confusion, and with it this dispute, by dividing it up into two parts as counsel has so aptly done in his brief.*

As written, however, option one cannot be compared to the selection of "Financial Responsibility Limits" in the *Arnold* Case. Option number one in the instant policy requires the insured to select the amount of coverage it desires, "as indicated below," so long as the limit selected is not less than the financial responsibility nor more than the liability limits. Thus, this case does not, as in *Arnold*, turn upon the unambiguous meaning of "financial responsibility." The facts are distinct from *Arnold*, and the distinction cannot be overemphasized.

It is possible, perhaps even certain, that Sprint intended to reject the liability limits and to accept the financial responsibility limits. It is likely that this intent could be proven through prior policies and the limits it selected in states other than Virginia. Sprint's intent, however, is of no significance in the matter before us where the sole issue is whether Sprint properly rejected the default coverage. In *White v. National Union Fire Ins. Co.*, the insured employer rejected uninsured motorist coverage wherever possible and selected the minimum coverage in states that required uninsured motorist coverage. *White v. National Union Fire Ins. Co.*, 913 F.2d 165, 166 (4th Cir. 1990). The insured returned the Virginia form but neglected to select an option. The Court found that the insured had not rejected the default coverage and, as a result, Virginia law required the insurer to provide uninsured motorist coverage equal to that of the liability coverage. *Id.*, at 167. In *White*, as here, counsel for the insurance company argued that principles of insurance law demanded that the Court conform the policy to the intent of the parties. The Court, however, determined the parties' intent to be irrelevant, stating:

The case does not present us with the construction of a policy. It does not deal with how to interpret an ambiguous or missing term. Rather, we must decide if [the insured] complied with a state regulatory statute that mandates that an insured's UM coverage equal the policy liability limits unless the insured rejects the default coverage and opts for a lesser minimum coverage. The only issue presented here is whether [the insured] properly rejected the default coverage.

*Id.*, at 169.

It was no matter that a rejection could be *inferred* by the insured's past practice of consistently minimizing uninsured motorist coverage. The Court further stated:

Information that supports an inference by the insurer that the insured intends to reject a default level of coverage does not suffice, under Virginia law, as an actual "rejection" of that coverage. The statute's plain language explicitly required [the insured] to reject the default coverage by notifying [the insurer] of that rejection. Furthermore, the law's explicit rejection requirement is consistent with its purpose of affording adequate protection to those injured by uninsured motorists.

*Id.*, at 169.

In *White*, as here, the insurer also argued that because the policy was a renewal policy, it was not required to send the insured an uninsured motorist selection form and that it should not be penalized for the insured's "clerical omission on a form that it was not required to provide." *Id.*, at 169. The Court responded, however, that since the insurer *did* send the forms, it necessitated a response as to the insured's selection for coverage. Significantly, the *White* Court found that the insurer could not "now avoid the lack of a statutorily required rejection of default coverage by pointing to a prior one where a subsequent, albeit inadequate rejection was furnished." *Id.*, at 169-70.

The only difference between *White* and the matter before us is that in *White*, no option was selected whatsoever while here, a selection was begun but not completed. The distinction between the two, therefore, amounts to nothing more than the difference between a non-choice and an incomplete choice. When faced with a statute that requires a rejection, the difference is inconsequential. Neither a non-choice nor, as here, an incomplete choice amounts to a rejection. Any other conclusion would require the Court to guess as to the amount Sprint would have selected if it had completed option

one. This selection would lie somewhere between $25,000 and $2,000,000. In the absence of a rejection, the default liability applies.

In conclusion, due to the fact that Sprint failed to complete option one by specifying the coverage it desired, it did not reject the liability limits as required by Code § 38.2-2206. That section requires that the liability limits apply *unless* the insured rejects the additional coverage. As a result, the uninsured motorist coverage must equal but not exceed the liability limits of $2,000,000.

Accordingly, the Court hereby grants the plaintiff's motion for summary judgment and denies the motions for summary judgment filed on behalf of Continental, Carolina Telephone and Telegraph Company, and State Farm.