INSURANCE COMPANY OF NORTH AMERICA, Plaintiff–Appellee,

v.

Alexander E. MacMILLAN, Defendant–Appellant,

and

Tammy L. Harris, Nationwide Mutual Insurance Company, Defendants.

INSURANCE COMPANY OF NORTH AMERICA, Plaintiff–Appellant,

v.

Alexander E. MacMILLAN, Defendant–Appellee,

and

Tammy L. Harris, Nationwide Mutual Insurance Company, Defendants.

Nos. 90–2223, 90–2225.

United States Court of Appeals, Fourth Circuit.

Argued July 9, 1991.

Decided Sept. 13, 1991.

William C. Walker, James Cureton McCaa, III, Taylor & Walker, P.C., Norfolk, Va., for defendant-appellant.

Clement J. Robbins, IV, Outland, Gray, O'Keefe & Hubbard, Chesapeake, Va., for plaintiff-appellee.

Before ERVIN, Chief Judge, and MURNAGHAN and SPROUSE, Circuit Judges.

## OPINION

MURNAGHAN, Circuit Judge:

Here we confront a contract issue between diverse parties in a declaratory judgment action filed by Insurance Company of North America (INA). Alexander E. MacMillan was an employee of Sherwin–Williams Company, who, while operating in the course of employment an insured vehicle owned by Sherwin–Williams, which was principally garaged in Virginia, was involved in an automobile accident with Tammy L. Harris on October 30, 1987. INA brought an action against MacMillan, Harris, and the Nationwide Mutual Insurance Company (Nationwide) to determine what amount of uninsured/underinsured (hereinafter "UM") coverage was provided in INA's policy with Sherwin–Williams.

MacMillan was an insured under the policy, and the recovery against Harris might make her an underinsured motorist.

In Virginia, one must carry both liability and UM insurance coverage, though not necessarily in equal amounts. One may arrange for minimum UM coverage of $25,000 [1] yet purchase liability coverage at a greater amount. Sherwin–Williams carried $2,000,000 in liability coverage.

Section 38.2–2206 of the Virginia Code, on the subject of UM coverage, states, with respect to a new policy, that "unless the insured rejects the additional uninsured motorist insurance coverage by notifying the insurer as provided in subsection B of § 38.2–2202," the amount applicable to liability insurance coverage shall apply. Thus, an insured who in a new policy has contracted to purchase liability insurance in excess of the minimum UM coverage mandated by law will see the premium increase to afford the level of UM coverage equal to liability coverage, unless within twenty days of the mailing by the insurer of the policy or the premium notice the insured notifies the insurer of a desire to reduce the coverage. Va.Code Ann. § 38.-22202B. The written rejection of UM coverage equal to liability coverage, in the case of a new policy, need not be supplied to the insured by the insurer if a written rejection has already been signed. After twenty days, the insurer is relieved of its obligation imposed by the statute to attach to any subsequently delivered renewal policy the notice statement required by that statute.[2]

The relationship between INA and Sherwin–Williams commenced with an automobile policy in 1982. The policy in that year acknowledged for autos covered by it that it was subject to Virginia's compulsory UM law. Renewals occurred annually as of

---

1. Virginia law requires minimum liability insurance of $25,000 because of bodily injury or death to one person in any one accident. Va. Code Ann. § 46.2–472(3).

2. A violation of that notice requirement by statute may prevent issuance of the policy. However, "the violation is redressable by the State Corporation Commission in its regulatory capacity and not through extension of coverage." *Dairyland Ins. Co. v. Collier,* 453 F.Supp. 883, 885 (W.D.Va.1978).

July 1st for every subsequent year through the year commencing July 1, 1987. That 1987 policy similarly stated that there was compulsory Virginia UM law which could not be rejected. For that year the precise form required by Virginia Code Section 38.2–2202 B was apparently not issued and sent to the insured.

In any event, Sherwin–Williams, the insured, by a selection form executed on September 30, 1986, clearly was given by INA the choice to accept or reject minimum UM coverage or an amount of coverage equal to liability coverage.

Subsequently, INA did issue a policy for the 1987–1988 year on the basis of a specific rejection of any coverage appearing on the selection form dated September 30, 1986 received from the insured, Sherwin–Williams. September 30, 1986 was, of course, more than twenty days beyond the issuance of the July 1, 1986 policy. Also, the rejection purported to apply to all UM coverage while Virginia law required the vehicle owner to maintain a minimum of $25,000 UM coverage. On those grounds it can be argued that 1) the rejection was untimely and so ineffective, and 2) the rejection did not provide for the statutory minimum for uninsured motorist coverage and so for that reason also was ineffective. If the rejection was fully ineffective, it followed that the liability coverage of $2,000,000 was to extend to UM coverage.

For both the sufficiency of the rejection and the timeliness issues we first may have to address the fact that, for the 1986–1987 policy, the twenty day requirement was not met. We first consider our recent decision in *White v. National Union Fire Ins. Co.*, 913 F.2d 165 (4th Cir.1990), where we dealt with a similar problem involving liability coverage of $2,000,000 and a UM form permitting selection by the insured of 1) an amount equal to liability coverage, 2) the choice of a lesser amount not less than $60,000 for liability coverage, or 3) total rejection of the statutorily mandated UM coverage in Virginia. Proof was advanced of rejection by inference of insurance above the mandated minimum, admitting that "because of a clerical omission, Man-

ville [the insured] did not complete the form sent to it concerning UM coverage in Virginia." *Id.* at 169. But, *White* held that inference did not suffice; explicit rejection by notification from the insured was the statutory requirement.

■ The present case differs from *White* in one essential respect. The insured did explicitly, not merely inferentially, reject all uninsured motorist coverage. *White* need not give us pause, in any event, because for 1987–1988 (the accident having occurred on October 30, 1987), the Virginia statute provides that a rejection in one year excuses the need for a rejection in a subsequent year. The September 30, 1986 rejection was, therefore, timely for the 1987–1988 term.

■ There remains, however, the question of whether the excessiveness of the rejection because of the extension to include the mandatory minimum, which could not be effectively rejected, made it entirely null and void or only struck it out to the extent it applied to the statutory minimum, leaving everything in excess thereof still rejected. That subject is ambiguously touched on in *White*. First, a total rejection was said to be "not legally available to Manville [the insured] because Virginia law provided for a minimum level of coverage." *Id.* at 166. Second, *White* stated that "[i]f an insured did reject the default coverage, the insured was still insured for the minimum amount required under Virginia law." *Id.* It is further suggested that the amount of liability coverage extends to UM coverage "unless the insured rejects the default coverage and opts for a lesser minimum coverage." *Id.* at 169.

Consideration of *Bray v. Ins. Co. of the State of Pennsylvania*, 917 F.2d 130 (4th Cir., 1990), does not do much to elucidate the effectiveness or ineffectiveness of an express, but excessive, rejection. In that case it was observed "[i]n *White*, as here, the insured did not specifically reject the increased coverage." *Id.* at 133.

In our view, the question turns on whether invalidity of the rejection as untimely on September 30, 1986 was thereafter unrepairable. The 1987–1988 policy issued July

1, 1987, contained an endorsement to the policy providing for $60,000 of uninsured motorist coverage in Virginia, thereby erasing the defect in the rejection of total absence of UM coverage. We may assume that $2,000,000 of uninsured motorist coverage may well have been in force all of the 1986–1987 year,[3] but UM coverage in excess of the legal statutory minimum was in effect on October 30, 1987 when the accident occurred. If that were not the case, we should be locking insureds for the life of a policy, typically one year, into the increased, and not UM legally required coverage. Those who belatedly wish to reduce for the future UM coverage to a point less than the amount of liability coverage but at least equal to mandated minimum coverage will be forced to cancel any existing policy, simultaneously taking a new policy (being careful to give a timely and adequate rejection), either from some other insurer or from the very one with whom the insured has satisfactorily dealt, perhaps for many years.

Accordingly, denial of the requested declaration of UM coverage at the level of $2,000,000 is affirmed. Consequently, while proceeding on slightly different grounds than those adopted by the district court, we affirm the summary judgment, holding that the liability coverage limit of $2,000,000 in Sherwin–Williams' UM policy was not in effect when the accident occurred on October 30, 1987.[4] Turning to a different question which arose in the district court, we consider the propriety of a ruling under Federal Rule of Civil Procedure 37 which ordered INA to pay a daily fine to MacMillan in addition to attorney's fees. The district court awarded the sum of $5,000 because of dilatoriness in complying with discovery activity without indicating the expenses that were thereby incurred by MacMillan and, indeed, indicating that the award was essentially a fine. The district judge's contemporaneous award of attorney's fees has not been appealed from by INA. However, the flat amount not related to actual expenses is not able to withstand Fed.R.Civ.P. 37 requirements and must be reversed. *Batson v. Neal Spelce Assocs., Inc.*, 765 F.2d 511, 516 (5th Cir.1985).

We, therefore, affirm on the merits and reverse on the Rule 37 award against INA of $5,000.00.

**AFFIRMED IN PART AND REVERSED IN PART.**

---

**3.** We leave unresolved, since decision is not compelled, the effect of the statutory and policy provision requiring that compulsory UM law could not be rejected. *See, e.g., Nichols v. Anderson*, 837 F.2d 1372, 1376 (5th Cir.1988) ("radius-exclusion" clause was valid in excess of the minimum insurance required by state law). However, it does seem to us that the dual September 30, 1986 rejection may not necessarily lead to the conclusion that Sherwin–Williams wanted *no* UM coverage for cars principally garaged in Virginia. A plausible explanation may be that Sherwin–Williams opted for something in-between, a conclusion borne out by the endorsement to the 1987–88 policy providing for $60,000 in UM coverage in Virginia. In any event, the rejection was not defective for other reasons as to UM coverage above the statutorily mandated minimum.

**4.** There is some suggestion in MacMillan's brief that INA urged in the district court that the minimum limit of $25,000 required by state law, and not the $60,000 limit contained in the endorsement to the 1987–88 policy, should apply if the rejection of the $2,000,000 limit was effective. Although the district court did note in its order on final pre-trial conference that one of MacMillan's triable issues was "[w]hat is the amount, if any, of underinsured motorists insurance owed to MacMillan[,]" we have found nothing in either parties' motion for summary judgment that calls the district court's attention to the $60,000/25,000 question. It is not surprising, then, that the district court made no mention of the matter in its order granting summary judgment in INA's favor. While it may well be that $60,000 was the coverage in effect, we decline to address an issue not litigated below or raised on appeal. *United States v. One 1971 Mercedes–Benz*, 542 F.2d 912, 915 (4th Cir.1976).