USAA CASUALTY INSURANCE COMPANY, ET AL.

V.

SHERMAN G. ALEXANDER, ET AL.

Record No. 930919

June 10, 1994

Present: All the Justices

186

*Kenneth J. Barton, Jr. (Christine Mougin-Boal; Godard, West & Adelman*, on briefs), for appellants.
*Peter S. Everett; Dennis R. Carluzzo (Blankingship & Keith; Montedonico, Hamilton & Altman*, on brief), for appellees.

JUSTICE KEENAN delivered the opinion of the Court.

In this appeal, we consider several automobile insurance coverage issues involving Code § 38.2-2206, which addresses uninsured motorist (UM) and underinsured motorist (UIM) insurance.

On April 28, 1991, Sherman G. Alexander and his son, Scott S. Alexander, were seriously injured when their vehicle was struck by a car negligently operated by Jerry Lee Jackson. At the time of the accident, Jackson had in effect an automobile liability policy issued by Allstate Insurance Company, with a limit of $50,000 for a single bodily injury claim.

In addition, Sherman and Scott Alexander had the benefit of UM coverage under three automobile insurance policies. At the time this accident occurred, Sherman Alexander and his two sons, Scott and John M. Alexander, were residents of the same household in Fairfax. Each Alexander had a separate automobile policy in effect at the time of the accident. The declarations page of Sherman Alexander's policy, which was issued by United Services Automobile Association (USAA), listed $25,000 UM coverage for each person injured. Scott Alexander's policy, issued by USAA Casualty Insurance Company (USAA Casualty), provided $100,000 UM coverage per injured person, and John Alexander's policy, issued by USAA Casualty, provided $50,000 UM coverage per injured person.

Sherman and Scott Alexander filed a motion for declaratory judgment against USAA and USAA Casualty (the insurers), seeking a determination of their rights under the UM endorsements of the three policies issued to the Alexanders. After conducting an evidentiary hearing, the trial court ruled that Sherman and Scott each enjoyed $250,000 UIM coverage, before application of a credit for any payment made by Jackson's liability insurer.

On appeal, the insurers contend: (1) that the trial court erred in holding that Sherman Alexander's UM coverage was equal to his liability coverage, despite his execution of a waiver form in 1984 in which he selected $25,000 UM coverage; (2) that because only Scott Alexander's UM coverage was in an amount greater than Jackson's liability coverage, the three Alexander policies should not be "stacked" together to produce higher amounts of UIM coverage for the injured parties; and (3) that because Sherman had purchased only "minimum limits" UM coverage, his policy afforded no UIM insurance.

## I. WAIVER OF HIGHER LEVEL OF UM COVERAGE

Code § 38.2-2206(A) requires an issuer of an automobile insurance policy to provide UM coverage in limits equal to the limits of liability insurance provided by the policy, unless the insured rejects that level of coverage and chooses to purchase a lesser amount of UM coverage "by notifying the insurer as provided in subsection B of § 38.2-2202." Code § 38.2-2202(B) requires that each "new policy or original premium notice of insurance" include a statement advising the insured that UM coverage, equal to the limits of liability coverage, will be provided unless the insured acts within 20 days to notify the insurer that a lesser amount of coverage is desired.

Code § 38.2-2202(B) further provides: "After twenty days, the insurer shall be relieved of the obligation imposed by this subsection to attach or imprint the foregoing statement to any subsequently delivered renewal policy, extension certificate, other written statement of coverage continuance, or to any subsequently mailed premium notice." Thus, once the insured has effectively reduced the level of coverage by notifying the insurer, in accordance with Code § 38.2-2202(B), the waiver and reduction of coverage remains in effect during subsequent renewals of the pol-

icy. Code § 38.2-2202(B); *see also Insurance Co. of North America v. MacMillan*, 945 F.2d 729, 730 (4th Cir. 1991).

■ In this case, the trial court found that, in 1984, Sherman Alexander had executed and returned a waiver form to USAA by which he requested $25,000 UM coverage and rejected the higher level of coverage, which would have been $100,000. He continued to be insured by USAA from 1984 through the date of the accident in 1991. The declarations pages issued by USAA during this time, as well as the premiums required to be paid, reflected that the renewal policies provided $25,000 UM coverage. In 1990, USAA mailed Sherman a renewal policy for the 1991 period covering the date of the accident; USAA also sent him the notice required by Code § 38.2-2202(B) and a waiver form by which a lower level of UM coverage could be requested. However, Sherman did not return this waiver form to USAA.

■ The trial court held that "USAA's action in sending Sherman Alexander a waiver form triggered a new policy limit selection decision" and that, because Sherman did not return the form, he did not effectively reject the higher UM limits. Because no effective waiver had been made, the court held, the UM coverage available under Sherman's policy was $100,000, not $25,000.

On appeal, the insurers argue that Sherman's 1984 waiver of higher UM coverage remained effective through later renewals of his policy, so that his UM coverage at the time of the accident remained $25,000. In response, the Alexanders argue that the trial court's decision was correct, based on *White v. National Union Fire Insurance Co.*, 913 F.2d 165 (4th Cir. 1990). Noting the factual similarities between the present case and *White*, they contend that Sherman was required to respond to the 1990 waiver form sent him by USAA in order to make an effective rejection of the higher UM limits. Because he failed to return the form, they argue, he was provided with the higher UM limits by operation of law, pursuant to Code § 38.2-2206(A).

In *White*, the insurer, National Union, had sent its insured a form on which the insured could indicate the desired level of UM coverage. An employee of the insured signed and returned the form, but failed to check any of the options for coverage listed on the form. The Fourth Circuit held that National Union could not rely on a communication by which the insured, in an earlier year, had rejected the higher UM limits, because National Union had chosen to send another coverage selection form, which prompted

the insured to communicate in return. Because the incomplete coverage selection form was inadequate to constitute a rejection, the Fourth Circuit concluded that the insured had not rejected the higher level of UM coverage. *Id.* at 169-70.

The Alexanders contend that here, as in *White*, the insurer chose to send a waiver form to Sherman Alexander in connection with the policy renewal in 1990, and that, as in *White*, Sherman took no action that was adequate to constitute a rejection of the higher UM limits. We disagree with the Alexanders' analysis of *White*.

We believe that *White* is distinguishable on its facts because in that case "a subsequent, albeit inadequate, rejection was furnished" by the insured's employee to National Union. *Id.* at 170. It was the fact that the insured attempted to respond to the insurer's request for a selection of coverage, and did so ineffectually, that led to the result in *White*. Here, in contrast, Sherman Alexander did not respond in any way to USAA's communication, and we hold that the mere fact that USAA sent him a waiver form was not sufficient to negate Sherman's earlier decision to reject the higher limits of UM coverage. Thus, the 1984 waiver of higher UM coverage remained in effect through later policy renewals, *see* Code § 38.2-2202(B), so that Sherman's UM coverage at the time of the accident was $25,000.

## II. STACKING OF UIM COVERAGE UNDER MULTIPLE POLICIES

Three policies providing UM coverage potentially were available to both Sherman and Scott Alexander. Each was a named insured on his own insurance policy, and each was also an "insured" because of his status as a relative and resident of the same household under the two additional policies owned by the other members of the Alexander family. The insurers contend that the trial court erred in stacking together the three policies in order to determine the total amount of UIM coverage available. In considering this contention, we are guided by the language of the statutory provisions governing UM and UIM coverage, and by our prior decisions addressing stacking of UM coverage.

UM coverage may be available simultaneously from various sources; stacking of that coverage is permitted unless clear and unambiguous language in the insurance policies prevents such multiple coverage. *Goodville Mut. Cas. Co. v. Borror*, 221 Va.

967, 970, 275 S.E.2d 625, 627 (1981). In the case of multiple policies, each providing for UM coverage, the language of Code § 38.2-2206(B) mandates stacking of the UM coverage provided under the separate policies. *See Bryant v. State Farm Mut. Auto. Ins. Co.*, 205 Va. 897, 901-02, 140 S.E.2d 817, 820 (1965) (construing former Code § 38.1-381(b), now recodified as Code § 38.2-2206(B) and containing substantively identical language).

 In addition to its requirements regarding UM insurance, Code § 38.2-2206(A) obligates an insurer to pay a claimant for damages caused by the operation or use of an underinsured vehicle, "to the extent the vehicle is underinsured, as defined in subsection B of this section." Code § 38.2-2206(B) provides in relevant part:

> A motor vehicle is "underinsured" when, and to the extent that, the total amount of bodily injury . . . coverage applicable to the operation or use of the motor vehicle and available for payment for such bodily injury or property damage, . . . is less than the total amount of uninsured motorist coverage afforded any person injured as a result of the operation or use of the vehicle.

> "Available for payment" means the amount of liability insurance coverage applicable to the claim of the injured person for bodily injury . . . .

Thus, Code § 38.2-2206(B) further provides that a motor vehicle is underinsured to the extent that liability coverage on such vehicle is less than the UM coverage available to the claimant on account of the operation of such vehicle. *See Nationwide Mut. Ins. Co. v. Scott*, 234 Va. 573, 577, 363 S.E.2d 703, 705 (1988).

In this case, the insurers do not contest the Alexanders' position that the UIM coverage available to them under the three policies at issue should be stacked. They contend, however, that the UIM coverage should be stacked only after it has been determined whether Jackson's vehicle was in fact "underinsured" as defined in Code § 38.2-2206(B), and they argue that this threshold question must be answered by a policy-to-policy comparison. Thus, they argue, Jackson's $50,000 liability policy must be compared with the UM coverage available to Sherman, Scott, and John Alexander under *each* of the three policies at issue.

The insurers argue that Sherman Alexander possessed $25,000 UM coverage at the time of the accident, because of the 1984 waiver, and thus, with respect to Sherman's policy, Jackson's vehicle was not "underinsured." Similarly, because John Alexander's UM coverage of $50,000 was equal in amount to Jackson's liability coverage, Jackson's vehicle was not "underinsured" as to that policy. The insurers conclude that UIM coverage is available only with respect to Scott Alexander's policy, which provided UM coverage of $100,000. We disagree with this analysis, because it fails to apply the plain meaning of the language in Code § 38.2-2206(B).

■ As we often have stated, "when the language of a statute is clear and unambiguous, courts must accept its plain meaning and not resort to extrinsic evidence or the rules of construction." *Norfolk Airport Auth. v. Nordwall*, 246 Va. 391, 394, 436 S.E.2d 436, 438 (1993). The clear and unambiguous language of Code § 38.2-2206(B) requires that all the UM coverage available to Sherman and Scott Alexander be aggregated, or stacked, before the *total* amount of this coverage is compared with the *total* amount of liability coverage available to Jackson. The relevant portion of Code § 38.2-2206(B), set forth above, twice requires a determination of a "total" amount. First, the statute requires determination of "the total amount of bodily injury . . . coverage . . . available for payment," which "means the amount of liability insurance coverage applicable to the claim of the injured person for bodily injury." In this case, that total amount is the $50,000 available under Jackson's liability policy.

■ Second, the statute requires the determination of "the total amount of uninsured motorist coverage afforded any person injured as a result of the operation or use of the vehicle." In this case, that total amount is the coverage afforded under all three policies, or $175,000. Once these totals have been calculated, it becomes evident that Jackson's liability coverage is "less than" the total amount of UM coverage afforded to Sherman and Scott Alexander, so that, under the facts of this case, Jackson was operating an "underinsured motor vehicle" within the meaning of Code § 38.2-2206(A) and (B).

## III. UIM COVERAGE WITH "MINIMUM LIMITS" UM COVERAGE

The insurers also contend that, pursuant to language in Code § 38.2-2206(A), Sherman Alexander's purchase of "minimum limits" UM coverage of $25,000 released them from any obligation to provide him UIM coverage. Thus, they argue that the $25,000 UM coverage provided under Sherman's policy should not be stacked in determining the extent to which Jackson's vehicle was underinsured, within the meaning of Code § 38.2-2206(B).

■ At the time of the accident, the relevant portion of Code § 38.2-2206(A) provided as follows:

[N]o policy or contract of bodily injury . . . liability insurance relating to the ownership, maintenance, or use of a motor vehicle shall be issued or delivered in this Commonwealth . . . unless it contains an endorsement or provisions undertaking to pay the insured all sums that he is legally entitled to recover as damages from the owner or operator of an uninsured motor vehicle, within limits not less than the requirements of § 46.2-100. Those limits shall equal but not exceed the limits of the liability insurance provided by the policy, unless the insured rejects the additional uninsured motorist insurance coverage by notifying the insurer as provided in subsection B of § 38.2-2202. *Where the insured contracts for higher limits*, the endorsement or provisions for those limits shall also obligate the insurer to make payment for bodily injury . . . caused by the operation or use of an underinsured motor vehicle *to the extent the vehicle is underinsured, as defined in subsection B of this section.*

Code § 38.2-2206(A) (1990 Repl. Vol.) (emphasis added).

The insurers argue that Code § 38.2-2206(A) obligates an insurer to provide UIM coverage only "[w]here the insured contracts for higher limits" than those required by financial responsibility laws. They contend that Sherman Alexander did not purchase UM coverage in "higher limits," but in "minimum limits," that is, the $25,000 minimum required by Code §§ 46.2-100

and 46.2-472.* Therefore, they argue, the statutory qualification that would obligate them to provide UIM coverage has not been met.

We believe that this provision of Code § 38.2-2206(A) is ambiguous when read together with other provisions of Code § 38.2-2206(A) and (B). Code § 38.2-2206(A) also obligates the insurer to "make payment for bodily injury . . . caused by the operation or use of an underinsured motor vehicle *to the extent the vehicle is underinsured, as defined in subsection B of this section.*" (Emphasis added.) However, the definition contained in Code § 38.2-2206(B) provides that "the extent to which the vehicle is underinsured" is determined not by whether the insured has contracted for higher limits, but by a comparison of the "total amount of uninsured motorist coverage afforded any person" with the total amount of liability insurance available for payment.

Because these provisions of Code § 38.2-2206(A) and (B) are ambiguous when considered together, we interpret them under settled rules of statutory construction. *City of Virginia Beach v. Board of Supervisors*, 246 Va. 233, 236, 435 S.E.2d 382, 384 (1993). The ultimate purpose of these rules is to ascertain the intention of the legislature, and "[e]very statute is to be read so as to 'promote the ability of the enactment to remedy the mischief at which it is directed.'" *Bulala v. Boyd*, 239 Va. 218, 227, 389 S.E.2d 670, 674 (1990) (quoting *Board of Supervisors v. King Land Corp.*, 238 Va. 97, 103, 380 S.E.2d 895, 897 (1989)).

We have recognized that the statute governing UM insurance "was enacted for the benefit of injured persons, is remedial in nature, and is liberally construed so that the purpose intended may be accomplished." *Grossman v. Glens Falls Ins. Co.*, 211 Va. 195, 197, 176 S.E.2d 318, 320 (1970). Further, in considering specific provisions relating to UIM insurance, we have held that "the legislative purpose was to increase the total protection afforded by insurance to claimants injured or damaged by negligent motorists." *Nationwide Mut. Ins. Co. v. Scott*, 234 Va. at 577, 363 S.E.2d at 705. We therefore resolve the present ambigu-

---

* Code § 46.2-100 provides in part: "'*Financial responsibility*' means the ability to respond in damages for liability thereafter incurred arising out of the ownership, maintenance, use, or operation of a motor vehicle, in the amounts provided for in § 46.2-472." Code § 46.2-472 requires every motor vehicle owner's policy to provide liability insurance "subject to a limit . . . of $25,000 because of bodily injury to or death of one person in any one accident."

ity by holding that when, as here, an injured person has purchased only "minimum limits" UM coverage, but has a "total amount of uninsured motorist coverage afforded" that is greater than the statutory minimum, an insurer shall be deemed obligated to make payment "to the extent the vehicle is underinsured," as defined in Code § 38.2-2206(B).

■ In summary, we will affirm the trial court's ruling that Code § 38.2-2206 requires each of the three policies at issue here to be "stacked" prior to determining both whether Jackson's vehicle was "underinsured" and the amount of UIM coverage available to Sherman and Scott Alexander. We will reverse the trial court's ruling that Sherman Alexander's failure to return the waiver form to USAA in 1990 was an ineffective rejection of the higher level of UM coverage. We thus conclude, in accordance with our holdings today, that after stacking the per-person UM limits of the policies issued to Sherman, Scott, and John Alexander, in the amounts of $25,000, $100,000, and $50,000, respectively, Sherman Alexander enjoys $175,000 in UIM coverage, as does Scott Alexander. Any payments made by Allstate, Jackson's liability carrier, will be credited against this amount, pursuant to Code § 38.2-2206(A) and (B).

*Affirmed in part,*
*reversed in part,*
*and final judgment.*

JUSTICE COMPTON, with whom JUSTICE WHITING joins, dissenting in part.

I disagree with that part of the majority's ruling, expressed in Part III of the opinion, that Sherman Alexander's $25,000 policy limit should be stacked when computing available underinsured motorist coverage.

In clear, unambiguous language, the uninsured motorist statute provided: "Where the insured contracts for higher limits," the endorsement for those higher limits shall obligate the insurer to make payment for bodily injury resulting from the operation of an underinsured motor vehicle "to the extent the vehicle is underinsured, as defined in subsection B" of the statute. Code § 38.2-2206(A). The basis for turning to subsection (B) hinged on the condition precedent set forth in subsection (A): "Where the in-

sured contracts for higher limits." In other words, subsection (A) plainly stated that unless the insured had contracted for higher limits, there was no need to turn to subsection (B), which the majority employs to create an ambiguity.

In the present case, the majority ruled correctly that Sherman Alexander did not contract "for higher limits." That ends the inquiry, and he is precluded from claiming underinsured motorist coverage.

Accordingly, I would hold that $150,000, not $175,000, in underinsured motorist coverage is available, to be reduced by the payments made by Jackson's liability carrier.