# CIRCUIT COURT OF CHESTERFIELD COUNTY

Thomas E. Price

v.

Zurich American Ins. Co.
and Cincinnati Ins. Co.

December 17, 2003

Case Nos. CL02-1009, CL02-1078, CL02-1108

BY JUDGE CLEO E. POWELL

The parties Thomas E. Price, Zurich American Insurance Company, and Cincinnati Insurance Company submitted the issue in this case on the basis of stipulated facts and memorandum in support of Plaintiff Price's Motion for Summary Judgment, Defendant Zurich's Motion for Summary Judgment, and Plaintiff Price's and Defendant Cincinnati request for Declaratory Judgment.

The Court decides the Motion for Declaratory Judgment and, in light of that ruling, grants Defendant Zurich's Motion for Summary Judgment.

*Facts*

Thomas Price was injured when driving his employer's (Compass's) rental vehicle on Route 288 in Chesterfield County. He suffered severe injuries when his vehicle collided with a log left in the road by an unidentified "John Doe." The injury occurred on or about October 29, 1999, and plaintiff's claim was processed under the Uninsured/Underinsured Motorist (UM/UIM) provisions of the Zurich policy issued to Price's employer. The policy was in its second term; the first year extending from September 30, 1998 to September 30, 1999. The contract period in question is the renewal contract, which extended from September 30, 1999 to September 30, 2002. (Jt. Stips. # 13.)

Compass's original policy with Zurich was negotiated through its broker, AON Risk Services. In the specifications dated June 4, 1998, AON requested a business auto liability policy with a $2,000,000 limit with the exception that UM/UIM claims would be insured at the statutory minimum limit of $70,000. (Jt. Stips. # 7.) The policy was drawn according to these specifications and issued to Compass on October 15, 1998, with the effective date of September 30, 1998. (Jt. Stips. # 3.) In accordance with Virginia Code § 38.2-2206, Zurich sent a waiver form to Compass by which it could confirm its selection of the statutory minimum coverage of $70,000. The waiver's instructions notified the new policy holder that the signed waiver needed to be returned within twenty days. Compass did not send back the form by which it rejected the $2,000,000 coverage for UM/UIM claims within the twenty days. Compass executed the waiver on December 18, 1998. Zurich issued the policy with the $70,000 limit for UM/UIM coverage, which it provided at the reduced rates. Compass then paid the lower premiums for the entire year without complaint.

The same sequence occurred when the time for the renewal of the coverage approached. The broker sent specifications dated August 6, 1999, indicating his client's preference for a $2,000,000 liability policy with a $70,000 coverage for UM/UIM. (Jt. Stips. # 17.) Zurich sent the standard waiver form to Compass, and Compass delayed in returning the form but did so in February 2000, again indicating a preference for the lower coverage limits at lower rates. Compass sent back this form, indicating rejection of the higher limits, even after the accident had already occurred. (Jt. Stips. # 19.) The renewal policy, as issued, included the company's rate increases but did not alter the terms of the coverage. Compass paid premiums calculated on the basis of a $2,000,000 liability policy with more limited coverage of $70,000 for UM/UIM claims.

In this proceeding, Cincinnati argues that, since Compass' waiver was returned late to Zurich for both policy periods, the $2,000,000 liability limit for UM/UIM claims was never waived and, hence, Zurich is liable for up to $2,000,000 in UM/UIM claims for the injuries sustained by Mr. Price. Zurich, in its defense, contends that a bargained for exchange was concluded in 1998 and renewed in 1999 whereby Compass received reduced coverage and in turn Zurich provided lower insurance rates. Zurich rejects plaintiff's claim that the late return of the form for the renewal period in question, which began September 1999, resulted in the reinstatement of the $2,000,000 policy limit for UM/UIM claims. Zurich's argument is that even conceding that the waiver from Compass was not timely and, therefore, may not have determined the coverage for the first year, the return of the initial year's waiver form in

December 1998 established a basis for issuing the renewal policy at the lower rates with coverage of UM/UIM at the statutory minimum. Zurich argues that Virginia Code § 38.2-2202(B) requires the notice and response within twenty days only for new applications for liability insurance, but not for renewals.

## Discussion

The leading case in Virginia on the subject of UM/UIM coverage limits is *Government Employees Ins. Co. (GEICO) v. Hall*, 260 Va. 349 (2000). In *Hall*, the insured, Mrs. Palmer, had purchased automobile liability insurance from GEICO and executed a waiver form in 1991 to reduce her coverage for UM/UIM claims from $300,000 to $30,000. Although Mrs. Palmer sent in her renewal form late in 1992, GEICO again provided the lower rates and then, for the next several years did not even send waiver forms to Mrs. Palmer. In 1997, when Mrs. Palmer's daughter was killed in a collision with a "John Doe" unidentified motorist, the estate administrators claimed that GEICO was required to pay $300,000 rather than the $30,000 reduced coverage Mrs. Palmer had contracted for in 1991 and subsequently. (Bertha Hall, the named defendant, was the co-administrator of the daughter's estate.) As in this case, the plaintiff argued that the election of reduced coverage was ineffective, because it was filed more than twenty days after receipt of the policy. In rendering its decision, the Supreme Court held that, after examining the course of dealings between the parties, the twenty-day limit was "not an essential term" and thus could be waived by GEICO. Moreover, notice of the need for a signature within twenty days was not required after the initial year's waiver, 1991, since Va. Code § 38.2-2202(B) mandated the waiver only for new policies and not for renewals.[1] The Court went on to state that "subsequent actions by both GEICO and Palmer were consistent with an agreement for the lower amount of uninsured insurance coverage."

The *Hall* case is controlling regarding the facts before us. Here, as in *Hall*, the insurer and insured struck a bargain, a lower amount of UM/UIM

---

[1] See also *USAA Casualty Ins. Co. v. Alexander*, 248 Va. 185 (1994), in which Sherman Alexander elected coverage of $25,000 uninsured coverage in 1984 by completing a rejection form, but in 1991, the year of the accident for which claims were submitted, he did not return the form mailed to him. Alexander claimed he was therefore entitled to $100,000 rather than $25,000. The Supreme Court of Virginia disagreed, holding that the original waiver in 1984 remained in effect through later policy renewals.

insurance in exchange for lower rates. On four occasions, twice through its broker and twice through the waiver, Compass indicated that it desired the lower rate and Zurich granted it, writing the policies accordingly. Of particular note, is that, even after the accident, Compass returned a waiver of the higher premiums.

Price's argument that *Hall* is distinguishable because it dealt with a twenty-three year course of dealing as opposed to the thirteen months at bar is unpersuasive. The linchpin of the *Hall* decision is the unequivocal evidence of the mutual intent of the parties. Here, this court finds unequivocal evidence of the mutual intent of Compass and Zurich based on the dealings between the parties. Similarly, the Court rejects Cincinnati's attempt to distinguish *Hall*. There is nothing in *Hall* from which this Court can conclude that, under the facts of this case, the second year of the waiver coming after the accident is fatal to Zurich's argument.

This Court also rejects Price and Cincinnati's claims that the ineffective notice in 1998 renders the late notice in 2000 ineffective. This issue was addressed and decided by the Fourth Circuit in *Insurance Co. of N.A. v. MacMillan*, 945 F.2d 729 (4th Cir. 1991). There the Court rejected the claim of the plaintiff, Sherwin Williams Company, that its injured employee, Alexander MacMillan was entitled to coverage up to $2,000,000 under its policy. Sherwin Williams had returned a waiver, foregoing the $2,000,000 coverage and choosing $25,000 in coverage, but the waiver was received by the insurer after the twenty day deadline. In *MacMillan*, as here, the policy was up for renewal. The court held that the waiver, submitted in 1986, even though it arrived after the twenty day deadline, would suffice as the basis for lower rates in 1987 and thereafter. The Fourth Circuit ruled that: "the Virginia statute provides that a rejection in one year excuses the need for a rejection in a subsequent year. The September 30, 1986, rejection was therefore timely for the 1987-1998 year." Applying the Fourth Circuit's reasoning to the case before us, even if Compass's waiver of the higher limits was not timely for the first policy year, it served the purpose for the renewal year which was the year in which the accident occurred.

Plaintiff has submitted a brief in which it also references insurance cases from the Virginia Supreme Court and the Fourth Circuit. These rulings, however, do not govern the case before us. In *State Farm Mutual Auto. Ins. Co. v. Weisman*, 247 Va. 199 (1994), the Supreme Court of Virginia delivered a judgment for the plaintiff, holding that the waiver reducing coverage and insurance rates was invalid since it was signed by the husband and not the wife when both were the "insured" under the policy. In the Fourth Circuit decision in *White v. National Union Fire Ins. Co.*, 913 F.2d 165 (4th Cir.

1990), the Court held for the plaintiff when the insured failed to check any box on the waiver provided by the insurance company. In *White*, the Court ruled that the insurance company could not infer from other forms submitted by the defendant that he desired UM/UIM coverage at the lowest possible rates.

Plaintiff, in citing these cases, argues that, when a waiver is submitted with irregularities, it is invalid as a basis for establishing the UM/UIM coverage limits. This argument is flawed in light of the holdings discussed above in that: (1) the twenty day time limit is "not an essential term" and therefore can be waived by the insurer; that (2) the statute, Va. Code § 38.2-2202(B), requires the waiver only for new applications and not for renewals; and (3) that a rejection in one year, albeit ineffectual for that year, serves as a basis for a rejection in a subsequent year. Here, although untimely, Zurich received bona fide waivers signed by the proper parties. Based on the authorities cited, under the specific facts of this case, this Court finds that once the insured waived the maximum UM/UIM coverage in its initial year and chose lower coverage limits at lower prices, it could renew on those same terms under Virginia Code § 38.2-2206 and 38.2-2202(B) even if the waiver in the first year was sent more than twenty days after it has been received. Moreover, the waiver was not even required for renewal policies.

## Conclusion

This Court declares that the UM/UIM coverage provided to Compass was $70,000.00. Based on this declaration, Zurich's Motion for Summary Judgment is granted.