**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 12-1189**

SHIRLEY A. WESTVEER, Administrator Personal Representative
of the Estate of Arthur E. Westveer, Jr.,

Plaintiff – Appellant,

v.

GARRISON PROPERTY & CASUALTY INSURANCE COMPANY,

Defendant – Appellee.

Appeal from the United States District Court for the Eastern
District of Virginia, at Norfolk.  Robert G. Doumar, Senior
District Judge.  (2:11-cv-00255-RGD-DEM)

Argued:  January 30, 2013          Decided:  March 22, 2013

Before TRAXLER, Chief Judge, and GREGORY and DUNCAN, Circuit
Judges.

Affirmed by unpublished per curiam opinion.

John Stephen Wilson, WILSON & MCINTYRE, PLLC, Norfolk, Virginia,
for Appellant.  Brian Nelson Casey, TAYLOR & WALKER, PC,
Norfolk, Virginia, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

After her husband was killed in a car wreck, Shirley Westveer brought this action seeking a declaration that she was entitled to "stack" the limits of underinsured motorist coverage for each of the vehicles insured under an automobile insurance policy issued to the Westveers by Garrison Property & Casualty Insurance Company. The district court held that stacking was prohibited under the terms of the policy, and Westveer appeals. For the reasons set forth below, we affirm.

I.

Subject to certain exceptions not relevant here, Virginia law requires every automobile liability insurance policy issued in the state to include coverage for damages caused by uninsured vehicles ("UM" coverage). See Va. Code Ann. § 38.2-2206(A). The statute also obligates the insurer to pay for damages caused by an underinsured vehicle ("UIM" coverage), "to the extent the vehicle is underinsured, as defined in subsection B of this section." Id. Under subsection B,

> [a] motor vehicle is "underinsured" when, and to the extent that, the total amount of bodily injury and property damage coverage applicable to the operation or use of the motor vehicle and available for payment for such bodily injury or property damage . . . is less than the total amount of uninsured motorist coverage afforded any person injured as a result of the operation or use of the vehicle.

2

Va. Code Ann. § 38.2-2206(B) (emphasis added). Accordingly, a vehicle that causes an accident is "underinsured" for purposes of the statute only if the liability insurance covering the at-fault vehicle is less than the total amount of UM/UIM insurance available to the injured party. See id.; see also USAA Cas. Ins. Co. v. Alexander, 445 S.E.2d 145, 148 (Va. 1994) ("[A] motor vehicle is underinsured to the extent that liability coverage on such vehicle is less than the UM coverage available to the claimant on account of the operation of such vehicle.").

Section 38.2-2206(B) requires a comparison of the total UM/UIM coverage to the total liability coverage. Accordingly, if the injured party is entitled to payment from multiple sources of UM/UIM coverage, the coverage limits for each such source must be "aggregated, or stacked, before the total amount of this coverage is compared with the total amount of liability coverage." Alexander, 445 S.E.2d at 149. If the injured party is insured under a single automobile policy that covers multiple vehicles, the injured insured may stack the UM/UIM limits for each car insured unless the policy clearly and unambiguously prohibits stacking. See Goodville Mut. Cas. Co. v. Borror, 275 S.E.2d 625, 627 (Va. 1981) ("[I]t is now the rule in Virginia that the [intra-policy] stacking of UM coverage will be permitted unless clear and unambiguous language exists on the face of the policy to prevent such multiple coverage.").

3

II.

Arthur Westveer ("Arthur") was killed when his car collided with a car driven by Heather Anderson, and the parties have stipulated for purposes of this action that Anderson was at fault in the collision. Anderson was insured under an automobile policy with liability limits of $100,000 per person and $300,000 per accident for claims involving bodily injury, and $50,000 per accident for property damage claims.

Arthur was the named insured on an automobile policy issued by Garrison. The Garrison policy insured three cars and provided UM/UIM coverage with stated limits of $100,000 per person and $300,000 per accident for bodily injury, and $50,000 for property damage. The policy includes a clause (the "anti-stacking clause") stating that:

> The limit of Bodily Injury Liability shown in the Declarations for each person for Uninsured Motorists Coverage[1] is our maximum limit of liability for all damages . . . arising out of bodily injury sustained by any one person in any one accident. . . .
>
> This is the most we will pay regardless of the number of:
>
> 1.  Insureds;
>
> 2.  Claims made; or
>
> 3.  Vehicles or premiums shown in the Declarations.

---

[1] The anti-stacking clause is contained in Part C of the policy. Although the policy describes Part C coverage as "Uninsured Motorists Coverage," J.A. 31, Part C includes coverage for both uninsured and underinsured vehicles.

4

J.A. 32-33.

Shirley Westveer, Arthur's widow and the administrator and personal representative of his estate, filed a claim for UIM benefits under the Garrison policy. Garrison rejected the claim, asserting that Anderson's car was not underinsured because its UM/UIM policy limits did not exceed the liability limits of Anderson's policy.

Westveer thereafter brought this action under the Declaratory Judgment Act, see 28 U.S.C. § 2201, seeking a determination of the coverage provided by the Garrison policy. Westveer contended that Anderson's car was underinsured because the UM/UIM coverage limits for each of the three cars insured under the Garrison policy must be stacked and the stacked UM/UIM coverage limits exceeded the liability limit of Anderson's policy.

The district court rejected Westveer's reading of the policy. In the district court's view, the policy's anti-stacking clause was indistinguishable from a clause that the Supreme Court of Virginia had found sufficient to preclude intra-policy stacking. See Goodville, 275 S.E.2d at 627-28. Accordingly, the court held that the Garrison policy clearly and unambiguously precluded stacking and that the per-person limit of UM/UIM coverage under the policy was $100,000. The court

entered judgment denying Westveer's motion for summary judgment and granting Garrison's cross-motion for summary judgment.

                                III.

On appeal, Westveer argues that the district court erred by concluding that stacking was prohibited by the anti-stacking clause. She argues that, at best, the anti-stacking clause is ambiguous when considered in conjunction with policy provisions that she believes affirmatively authorize stacking rights and that, at worst, the clause is deceptive and thus unenforceable.

                                A.

As the district court held, the anti-stacking clause here is materially indistinguishable from the clause enforced in Goodville. In that case, a multi-vehicle policy included a clause which stated that,

> Regardless of the number of motor vehicles to which this insurance applies, (a) the [$25,000] limit of liability for bodily injury stated in the schedule as applicable to "each person" is the limit of the company's liability for all damages because of bodily injury sustained by one person as the result of any one accident . . . .

Id. at 627 (internal alteration omitted). The court held that the "clear and unambiguous" language of the clause "requires the construction that stacking is not permissible." Id. at 628. As the court explained, the portion of the clause underlined above "plainly limits [the insurer's] UM liability for damages to any one person as a result of any one accident to $25,000. The mere

                                6

fact that two vehicles are insured and two separate premiums are charged is of no consequence in light of the express language of the policy." Id. at 628.

The anti-stacking clause here likewise makes it clear that where "any one person" is injured "in any one accident," the per-person UIM limit for bodily injury claims is the "maximum limit of liability for all damages." And by emphasizing that the per-person bodily-injury UIM limit "is the most we will pay" even if the policy insures multiple vehicles and charges separate premiums for each car insured, the clause makes it clear that the separate premiums are not purchasing separate units of UM/UIM coverage. Cf. Cunningham v. Insurance Co. of N. Am., 189 S.E.2d 832, 837 (Va. 1972) (stacking of UM benefits permitted because multi-car, separate-premium policy was ambiguous: "Defendant here chose to issue coverage on two separate automobiles and to accept a premium for each. . . . When we pay a double premium we expect double coverage.").

Although the anti-stacking clause requires reference to the policy's Declarations page to determine the dollar amount of the relevant UIM limit, the reference in no way muddies the otherwise clear language of the anti-stacking clause. Cf. Virginia Farm Bureau Mut. Ins. Co. v. Williams, 677 S.E.2d 299, 303 (Va. 2009) (finding otherwise clear anti-stacking clause ambiguous when considered in conjunction with declarations page

7

referenced in clause). The Declarations page includes a table listing the various categories of coverage provided by the policy and showing the liability limits for each category. Beneath the "PART C – UNINSURED MOTORISTS" heading, the Declarations page shows the liability limits as follows:

```
BODILY INJURY       EA PER  $100,000
                    EA ACC  $300,000
PROPERTY DAMAGE     EA ACC  $50,000
```

J.A. 15. Where one person is injured, the anti-stacking clause states that Garrison's maximum liability is "[t]he limit of Bodily Injury Liability shown in the Declarations for each person for Uninsured Motorists Coverage." J.A. 32. That language points directly to, and only to, the $100,000 "ea per" bodily injury limit listed under Part C in the Declarations. There is only one dollar amount shown for per-person/bodily-injury in the Uninsured Motorists section, and there are no other limits on the Declarations page to which the clause could be referring. See Williams, 677 S.E.2d at 303 (clause limiting liability to UM per-person/bodily injury limit shown in declarations found to be ambiguous because declarations showed three per-person UM limits in two different amounts). We therefore conclude that the anti-stacking clause clearly and unambiguously precludes stacking of the UM/UIM coverage limits.

B.

Westveer, however, contends that even if the language of the anti-stacking clause is clear enough in isolation, the policy affirmatively authorizes stacking through its definition of "underinsured motor vehicle." According to Westveer, because the policy affirmatively grants stacking rights while simultaneously purporting to withdraw those rights through the anti-stacking clause, the policy, viewed as a whole, is ambiguous and thus does not preclude stacking. See id. at 302 ("[A]ny ambiguity regarding the stacking of coverage within a policy will be construed against the insurer.").

Under the policy, an "underinsured motor vehicle" is a vehicle for which the total liability insurance "available for payment is less than the sum of the limits of liability applicable to the Insured for Uninsured Motorists Coverage under this policy or any other policy." J.A. 31. According to Westveer, the phrase "the sum of the limits of liability applicable to the Insured" requires stacking. Because the definition requires adding (or "sum[ming]") the limits (plural) of applicable UM/UIM coverage, Westveer argues that there must always and necessarily be more than one UM/UIM coverage limit that is "applicable to the Insured" under the Garrison policy. In Westveer's view, all of the coverages provided by the policy for each car insured are generally "applicable" to the insured.

9

Westveer thus argues that the phrase "the sum of the limits of liability applicable to the Insured for Uninsured Motorists Coverage" requires stacking of the UM/UIM limits for each car insured under the policy. We disagree.

The Garrison policy sets separate per-person and per-accident limits for claims involving bodily injury and still another limit for claims involving property damage, any combination of which could be implicated in any given case. When the policy definition is read in context, with the structure of the policy and policy limits in mind, the meaning and import of the phrase is apparent. See, e.g., Hill v. State Farm Mut. Auto. Ins. Co., 375 S.E.2d 727, 729 (Va. 1989) ("[A]s in the case of any other contract, the words used [in an insurance policy] are given their ordinary and customary meaning when they are susceptible of such construction."). The plural "limits of liability" does not mean that more than one liability limit will always be applicable, but simply reflects the possibility that a single incident might trigger more than one of the UM/UIM limits. And the "applicable to the Insured" language directs consideration of only those limits that are relevant and appropriately applied to the case at hand – for example, the per-person limit if one insured is injured, or the per-person and per-accident limits if more than one insured is injured. See Webster's Encyclopedic Unabridged Dictionary of

10

the English Language 102 (2001) (defining "applicable" as "capable of being applied; relevant; suitable; appropriate").

Westveer, however, rejects this obvious reading of the policy. The underinsured-vehicle calculation set out in the policy requires a comparison of the limits of liability insurance "available for payment" to the limits if UM/UIM coverage "applicable to the Insured." J.A. 31. The policy defines "available for payment" in a way that focuses on the particular claim of the injured party, see J.A. 31 (defining "available for payment" as "the amount of liability coverage applicable to the claim of the Insured as reduced by the payment of any other claims arising out of the same occurrence" (emphasis added)), but the policy does not define "applicable to the Insured." Westveer argues that the presence of a claim-specific definition on the liability-insurance side of the underinsured-vehicle calculation and the absence of a similarly claim-specific definition on the UM/UIM side of that calculation requires a broader understanding of what limits of UM/UIM coverage are "applicable to the Insured." Cf. Forst v. Rockingham Poultry Mktg. Coop., Inc., 279 S.E.2d 400, 404 (1981) ("When the General Assembly uses two different terms in the same act, it is presumed to mean two different things.").

We find Westveer's argument unpersuasive. As noted above, the policy requires a comparison of the limits of liability

11

insurance "available for payment" to the limits of UM/UIM coverage "applicable to the Insured." J.A. 31. A claim-specific focus when determining the UM/UIM limits "applicable to the Insured" is inherent in the use of the word "applicable."[2] See Webster's Encyclopedic Unabridged Dictionary 102. On the liability-insurance side of the calculation, however, an additional definition was needed to establish the claim-specific focus for determining the amount of liability insurance "available for payment."

The absence of a specific definition of the UM/UIM that is "applicable to the Insured" therefore cannot justify ignoring the plain meaning of the terms used in the policy or assigning more meaning than the terms reasonably can bear. The phrase at issue here -- "the sum of the limits of liability applicable to the Insured" -- cannot reasonably be interpreted as requiring stacking when determining whether the at-fault vehicle was underinsured. And because the policy does not affirmatively

---

[2] Before the district court and in the briefs filed with this court, counsel for Westveer contended that the policy authorized stacking of all UIM limits -- per-person, per-accident, and property damage -- for each car, for a total of $1,350,000 in UM/UIM coverage. At oral argument, however, counsel abandoned that claim and asserted a right to stack only the $100,000 per-person limit for each of the three cars insured under the policy. Counsel's narrower argument seems implicitly to reflect a similar understanding of the policy language.

require stacking, we reject Westveer's claim that the anti-stacking clause creates an ambiguity within the policy.[3]

C.

In her final effort to avoid the effect of the anti-stacking clause, Westveer argues that the clause itself is deceptive and thus unenforceable.

The anti-stacking clause states that the UM/UIM per-person bodily-injury limit (or the per-accident limit, if applicable) "is our maximum limit of liability for all damages" and is "the most" Garrison will pay under the policy.  J.A. 32-33.  The anti-stacking clause also includes a set-off provision stating that any damages payable under the UM/UIM coverage "shall be reduced" by the amount paid by or on behalf of the at-fault driver.  J.A. 33.  Westveer argues that as to a claim involving an <u>underinsured</u> vehicle, Garrison will <u>never</u> pay the full limit,

---

[3] Westveer also refers to the insuring agreement contained in the UM/UIM section of the policy and a statement on the Declarations page when arguing that the anti-stacking clause conflicts with other policy provisions authorizing stacking. Because the policy's definition of underinsured vehicle does not require stacking and the uninsured motorist statute does not require intra-policy stacking, there is no conflict between the anti-stacking clause and Garrison's promise in the insuring agreement to pay damages in accordance with the statute. And because the policy does not require stacking, there is likewise no conflict with the statement in the Declarations that the "limits shown . . . may not be combined regardless of the number of vehicles for which a premium is listed unless specifically authorized elsewhere in this policy."  J.A. 15.

13

since some amount of insurance is always available where UIM benefits are sought and the policy calls for the benefits payable to be reduced by the amounts paid by the liability insurer. Westveer thus contends that the anti-stacking clause is "deceptive and always untrue" in the UIM context, Brief of Appellant at 26, because Garrison will never be required to pay the "maximum limit" of the policy, J.A. 32. And because the anti-stacking clause is deceptive, Westveer contends the clause is unenforceable. We disagree.

Assuming that the set-off provision is enforceable and would operate as described by Westveer, we still find nothing deceptive about the anti-stacking clause. The policy's UM and UIM coverage, including the anti-stacking clause, is set out in Part C of the policy, which is entitled "Uninsured Motorists Coverage." J.A. 31. The policy consistently uses "Uninsured Motorists Coverage" to refer to both UM and UIM coverage, and the anti-stacking clause likewise encompasses UM and UIM coverage. Even if the full limit will never be paid in UIM cases, the full limit will <u>always</u> be paid in UM cases, where there is no liability insurance and thus no basis for a benefits offset. The anti-stacking clause therefore is not deceptive, and there is no basis for us to refuse to enforce it.

14

IV.

In its order denying Westveer's motion for summary judgment and granting Garrison's cross-motion for summary judgment, the district court stated that "because [Westveer] is not entitled to stack the UIM coverages present in the Declaration section of the Policy, UIM coverage is limited to $100,000." J.A. 440. Westveer construes the court's order as a declaration that she is entitled to a payment of $100,000 in UIM benefits. Garrison has refused to pay any amount under the policy, and Westveer believes Garrison's refusal to pay is premised on the set-off provision discussed above. Westveer argues that the set-off provision is void and that Garrison therefore cannot rely on the provision to evade its statutory obligation to provide underinsured coverage. See Nationwide Mut. Ins. Co. v. Hill, 439 S.E.2d 335, 339 (Va. 1994) (holding that a policy provision requiring a set-off of liability insurance payments against amount payable under UM coverage is "void as against public policy").

Contrary to Westveer's claim, the district court simply did not hold that Westveer was entitled to payment of $100,000 in UIM benefits. The district court held that the anti-stacking clause precluded stacking of the UM/UIM benefits for each car insured under the Garrison policy. Because stacking was precluded, the policy's per-person, bodily-injury limit for

15

UM/UIM coverage was $100,000, as shown in the policy Declarations and as stated by the district court in its order.

That the policy included UIM coverage with per-person limits of $100,000, however, does not mean that Garrison is obligated to pay UIM benefits in this case. Under § 38.2-2206(A), Garrison is obligated to pay UIM benefits in this case only "to the extent the vehicle is underinsured, as defined in [§ 38.2-2206(B)." Va. Code Ann. § 38.2-2206(A) (emphasis added). In this case, the at-fault vehicle is not underinsured within the meaning of the statute, because the non-stackable $100,000 per-person UIM limit under the Garrison policy does not exceed the liability limits of the at-fault driver's insurance. See id. § 38.2-2206(B) ("A motor vehicle is 'underinsured' when, and to the extent that, the [applicable liability coverage] . . . is less than the total amount of [UM/UIM] coverage afforded any person injured as a result of the operation or use of the vehicle.").

Because the at-fault vehicle was not underinsured, Westveer's UIM coverage was not triggered, and Garrison has no obligation to pay UIM benefits in any amount; there is nothing in the district court's order that can be construed as holding otherwise. Accordingly, the set-off provision has nothing to do with Garrison's refusal to pay benefits, and we need not

16

consider whether the set-off clause would be enforceable in a case where the insurer was obligated to pay UIM benefits.

## V.

As we have explained, the anti-stacking clause contained in the Garrison policy is not deceptive or otherwise unenforceable, and the clause clearly and unambiguously precludes stacking of UM/UIM benefits. Accordingly, the district court's order granting summary judgment to Garrison is hereby

AFFIRMED.